**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| DEREK LEE, | § | |
| | § | CIVIL ACTION NO. 3:10-cv-00538 |
| vs. | § | |
| | § | |
| CREDIT MANAGEMENT, LP | § | |
| DBA THE CMI GROUP, | § | |
| | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Derek Lee, by and through his counsel undersigned, hereby files this response in opposition to Defendant Credit Management, LP's, motion for summary judgment. In support thereof, Plaintiff respectfully states as follows:

**I.     INTRODUCTION.**

At no time did Plaintiff initiate any business with Defendant. Rather, Defendant obtained Plaintiff's cellular telephone number and for its own profit began initiating telephone calls to Plaintiff's cellular telephone number, via an automatic telephone dialing system, in an effort to collect a debt owed by Plaintiff to Defendant's client, Comcast. In doing so, Defendant violated federal and state laws including the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Texas Debt Collection Practices Act ("TDCPA"), Chapter 392 TEX. FIN. CODE, the Texas Deceptive Trade Practices Act ("DTPA"), Chapter 17, Subchapter E TEX. BUS. & COM. CODE, and the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by making no less than six telephone calls to Plaintiff's cellular telephone number using an automatic telephone dialing system

without Plaintiff's prior express consent.  Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, by repeatedly calling Plaintiff to collect a debt or to request proof that Plaintiff owed a lesser amount, when it knew that Plaintiff could not yet send proof.  Two of Defendant's employees in fact admitted that Defendant's conduct was harassing.  Defendant violated 15 U.S.C. § 1692e by making false statements to Plaintiff in effort to collect a debt, including falsely representing the amount of debt Plaintiff owed on multiple occasions.  This conduct also violates Tex. Fin. Code § 392.304(a)(19), which is a *per se* deceptive trade practice, in violation of the DTPA.  Defendant violated 15 U.S.C. § 1692g by failing to provide Plaintiff with the disclosures required by that section in its initial communication to Plaintiff or within five days thereafter.  As a result of Defendant's violations, Plaintiff has sustained emotional distress, including loss of sleep and disruption from his daily routine.  For reasons explained herein, Defendant cannot show that the undisputed facts entitle it to summary judgment.

## II.      STATEMENT OF FACTS.

1.      As of July 10, 2010, Plaintiff incurred a $32.00 debt to Comcast for failure to return a modem used in his home.  (See Plaintiff's deposition, relevant excerpts attached hereto as Exhibit A, at 60:18-21; Comcast statement, attached hereto as Exhibit B).

2.      Defendant placed telephone calls to Plaintiff's cellular telephone in effort to collect the debt on July 13, July 14, July 19, July 20, July 30, and August 5, 2010.  (See Plaintiff's phone record, attached hereto as Exhibit C[1]; Declaration of Dennis Kurz, filed concurrently herewith, ¶¶1-2).

3.      All the telephone calls were received by Plaintiff's cellular telephone.  (See Exhibit C).

---

[1] Defendant claims that Plaintiff did not produce this in discovery, however Plaintiff did produce it as Bates Stamp 000001.  (See Declaration of Dennis Kurz, ¶¶1-2).

4.    Plaintiff answered all Defendant's calls, with the exception of the July 13, 2010 call.  (Exhibit A at 67:15-19; Exhibit C).

5.    Plaintiff works offshore for weeks at a time as a tankerman, loading and discharging barges transporting fuel and chemical products.  (Exhibit A at 6:19-7:2).

6.    All of Defendant's phone calls to Plaintiff occurred while Plaintiff was at work, offshore.  (Exhibit A at 23:22-24:10).

7.    Defendant's collection notes on Plaintiff's account refer to a "DIALER" being used to make calls to Plaintiff's cellular telephone number.  (See Doc. 20-1 at pp. 72-74).

8.    Defendant's collection employee admitted in a phone conversation with Plaintiff on August 5, 2010, that the phone calls to Plaintiff were made using an automatic telephone dialing system, stating: "it's an automated dialer, it's going to communicate with you, it's going to call you every day.  It may even call you 3 or 4 times a day . . . ."  (Declaration of Dennis Kurz, ¶6; Declaration of Dennis Kurz at Exhibit 3).

9.    Defendant admits to being a debt collector as defined by 15 U.S.C. § 1692a(6). (See Defendant's Responses to Plaintiff's Requests for Admission, no. 3, attached hereto as Exhibit D).

10.    Plaintiff requested in discovery agreements and other relevant documents between Defendant and Comcast regarding Plaintiff's account, and Defendant produced no documents showing Plaintiff provided his cell phone number to Comcast during the transaction creating the debt.  (See Defendant's Second Supplemental Responses to Plaintiff's Requests for Production, no. 18-22, attached hereto as Exhibit E).

11.    Defendant's collection notes on Plaintiff's account reflect that the amount of debt Plaintiff owed was $386.21.  (See Doc. 20-1 at 79).

12.    On July 14, 2010, Defendant told Plaintiff that he owed a debt in the amount of $386.21.  (See Declaration of Dennis Kurz, ¶4; Declaration of Dennis Kurz at Exhibit 1).

13.     Defendant's July 14, 2010 telephone call to Plaintiff was Defendant's initial communication with Plaintiff in connection with the collection of the debt, and during this telephone call, Defendant did not provide the statements specified in 15 U.S.C. § 1692g(a)(3)-(5). (See Declaration of Dennis Kurz, ¶4, Declaration of Dennis Kurz at Exhibit 1).

14.     Also on July 14, 2010, Plaintiff told Defendant that he only owed $32.00 and that Comcast had provided him with an email confirming the same.  (See Declaration of Dennis Kurz, ¶4, Declaration of Dennis Kurz at Exhibit 1).  That email is attached hereto as Exhibit B.

15.     On July 14, 2010, Defendant asked Plaintiff to fax Comcast's email to Defendant. Plaintiff said that he would, but was currently unable to do so because he was at work, and that he worked offshore.  At the conclusion of the phone call, Plaintiff and Defendant came to an agreement that Plaintiff would fax the email to Defendant when he returned to shore.  (See Declaration of Dennis Kurz, ¶4, Declaration of Dennis Kurz at Exhibit 1).

16.     Plaintiff did not have access to a fax machine while working offshore and Defendant would not accept email transmission of the Comcast email.  (See Declaration of Dennis Kurz, ¶¶4, 5, 6, 8; Declaration of Dennis Kurz at Exhibits 1, 2, and 3).

17.     On August 5, 2010, Defendant again contacted Plaintiff in effort to collect the debt.  (Exhibit A at 49:1-4; Declaration of Dennis Kurz, ¶5; Declaration of Dennis Kurz at Exhibit 2).

18.     During Defendant's August 5, 2010 phone call to Plaintiff, Defendant again asserted that Plaintiff owed $386.21.  (See Declaration of Dennis Kurz, ¶5; Declaration of Dennis Kurz at Exhibit 2).

19.     Plaintiff again explained to Defendant that he did not owe that amount and that Comcast had sent him an email confirming he only owed $32.00.  (See Declaration of Dennis Kurz, ¶5; Declaration of Dennis Kurz at Exhibit 2).

20.     Plaintiff again explained that he worked offshore and that he hadn't been back home yet to turn in the modem or to fax Defendant the email.  (See Declaration of Dennis Kurz, ¶5; Declaration of Dennis Kurz at Exhibit 2).

21.     Plaintiff explained that continuing to call him while offshore is not going to solve anything, and he urged Defendant to communicate with Comcast.  (See Declaration of Dennis Kurz, ¶5; Declaration of Dennis Kurz at Exhibit 2).

22.     Instead, Defendant insisted that Plaintiff fax in the email.  (See Declaration of Dennis Kurz, ¶5; Declaration of Dennis Kurz at Exhibit 2).

23.     Plaintiff then asked Defendant: "So you're going to continue to harass me until Comcast says otherwise?"  (See Declaration of Dennis Kurz, ¶5; Declaration of Dennis Kurz at Exhibit 2).  Defendant replied: "Correct."  (See Declaration of Dennis Kurz, ¶5; Declaration of Dennis Kurz at Exhibit 2).

24.     Plaintiff called back and spoke with a different collection employee on August 5, 2010 and explained his situation.  This time, Defendant's collection employee stated: "If you think it's harassment, then so be it. That is harassment."  (See Declaration of Dennis Kurz, ¶6; Declaration of Dennis Kurz at Exhibit 3).

25.     In August, 2010, Plaintiff returned the modem and resolved his debt directly with Comcast.  (Exhibit A at 60:21-23).

26.     Plaintiff did not receive a letter from Defendant of any sort until August, 2010.  (Exhibit A at 65:1-10).  Neither Plaintiff nor Plaintiff's counsel has a copy of the letter. (Exhibit A at 66:1-3; Declaration of Dennis Kurz, ¶10).

27.     On or about October 25, 2010, Defendant sent Plaintiff, by and through his counsel, a letter in which it continued to assert that Plaintiff owed a debt in the amount of $386.21.  (See Declaration of Dennis Kurz, ¶9; Declaration of Dennis Kurz at Exhibit 4).

28.     Defendant's conduct disrupted Plaintiff's daily routine, as, among other things, he was forced to take time out of his busy work schedule.  (Exhibit A at 68:24–69:4).

29.     Plaintiff was reprimanded at work for taking Defendant's phone calls.  (Exhibit A at 82:19–83:4).

30.     The nature of Plaintiff's employment limits the amount of Plaintiff's sleep. (Exhibit A at 63:17–64:1). Accordingly, he must sleep when he can.  Defendant's conduct disrupted Plaintiff's ability to fall asleep and caused him to lose sleep.  (Exhibit A at 72:1-7).  As a result, Plaintiff is required to take sleeping medication to sleep normally.  (Exhibit A at 73:11-17).

31.     Plaintiff has never before required medication to sleep.  (Exhibit A at 74:6-14). Now he must take medication to fall asleep each week.  (Exhibit A at 74:6-14).

## III.   SUMMARY JUDGMENT STANDARD.

A court should grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is "material" if its resolution could affect the outcome of the action. *Commerce & Indus. Ins. Co. v. Grinell Corp.*, 280 F.3d 566, 570 (5th Cir. 2002).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court must review the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir. 2000).  It may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Summary judgment is not appropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987).

## FDCPA AND TDCPA CLAIMS

**IV.  THE FDCPA BROADLY PROHIBITS UNFAIR OR UNCONSCIONABLE COLLECTION METHODS, CONDUCT WHICH HARASSES, OPPRESSES OR ABUSES ANY CONSUMER, AND ANY FALSE, DECEPTIVE OR MISLEADING STATEMENTS, IN CONNECTION WITH THE COLLECTION OF A DEBT.**

The FDCPA is a comprehensive statute which prohibits a catalog of activities in connection with the collection of debts by third parties.  15 U.S.C. § 1692 *et seq.*  The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights.  15 U.S.C. § 1692k.  The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, both generally and in a specific list of disapproved practices, and prohibit harassing and abusive tactics, both generally and in a specific list of disapproved practices.

In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy."  15 U.S.C. § 1692(a).  Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers.  15 U.S.C. § 1692(b).  It is the express purpose of the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).

Accordingly, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action.  The substantive heart of the

FDCPA lies in three broad prohibitions.  First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  Simply, designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, the FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements, in connection with the collection of a debt.  *McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992); *Heintz v. Jenkins*, 514 U.S. 291 (1995); *Baker v. G.C. Services Corp.*, 677 F. 2d 775 (9th Cir. 1982).

## V.    THE FDCPA IMPOSES A STRICT LIABILITY STANDARD.

The FDCPA is a strict liability statute.  *Taylor v. Perrin, Landry, deLaunay & Durand,* 103 F.3d 1232 (5th Cir. 1997); *see also Irwin v. Mascott,* 112 F.  Supp. 2d 937 (N.D. Cal. 2000); *Pittman v. J.J. Mac Intyre Co. of Nevada, Inc.,* 969 F. Supp. 609 (D. Nev.1997).  Congress did not confine liability under the FDCPA to willful violations.  *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1613 (2010).  "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996); *see also Gearing v. Check Brokerage Corp.*, 233 F.3d 469 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated FDCPA); *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) (holding unintentional misrepresentation that debtor was obligated to pay a debt discharged in

bankruptcy violated the FDCPA); *Foti v. NCO Financial Systems, Inc.*, 424 F. Supp. 2d 643 (S.D.N.Y. 2006); *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993).

Although Plaintiff has alleged multiple violations of the FDCPA, detailed herein, a single violation is enough to establish civil liability under the FDCPA. *Taylor*, 103 F.3d at 1238.

## VI.   THE FDCPA IS LIBERALLY CONSTRUED IN FAVOR OF CONSUMER-DEBTORS.

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  The FDCPA is a remedial statute, and therefore must be construed liberally in favor of the debtor.  *Hamilton v. United Healtcare of Louisiana, Inc.*, 310 F. 3d 385, 392 (5th Cir. 2002); *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002); *Rouse v. Law Offices of Rory Clark*, 603 F.3d 699, 705 (9th Cir. 2010).

> [B]ecause the FDCPA is a remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors, it is logical for debt collectors—repeat players likely to be acquainted with the legal standards governing their industry—to bear the brunt of the risk. . . . [I]t does not seem "unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line."

*Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1171-72 (9th Cir. 2006) (quoting *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 393 (1965)).

Plaintiff is a consumer-debtor; the very person the FDCPA was enacted to protect.

**VII.   THE FDCPA IS INTERPRETED IN ACCORDANCE WITH THE "LEAST SOPHISTICATED CONSUMER" STANDARD.**

The Fifth Circuit has adopted the "least sophisticated consumer" standard in evaluating potential deception in collection letters challenged under the FDCPA.  *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009), *cert. denied,* 130 S. Ct. 1505 (2010); *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004), *cert. denied*, 546 U.S. 811 (2005).  A court "must assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors."  *Id.*  The least sophisticated consumer has been described as "one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer."  *Russell*, 74 F.3d at 34.  This standard "serves the dual purpose of protecting all consumers, including the inexperienced, the untrained and the credulous, from deceptive debt collection practices and protecting debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials."  *Taylor*, 103 F.3d at 1236.  *See also Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993) (purpose of standard is "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd").

**VIII.   PLAINTIFF IS A CONSUMER, DEFENDANT IS A DEBT COLLECTOR, AND THE SUBJECT OBLIGATION IS DEBT, AS DEFINED BY THE FDCPA.**

**A.   Plaintiff Is A "Consumer."**

"Consumer" is defined by the FDCPA as "any natural person obligated or allegedly obligated to pay any debt."  15 U.S.C § 1692a(3).  In the instant matter, Plaintiff incurred a $32.00 debt to Comcast for failure to return a modem used in his home.  (SOF, ¶1).  Therefore, Plaintiff is a "consumer" as defined by the FDCPA.

**B.   Defendant Is A "Debt Collector."**

"Debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C § 1692a(6).  For reason that instrumentalities of interstate commerce include telephone and the mails, virtually all commercial collection activities fall within the realm of the FDCPA.  In the instant matter, Defendant attempted to collect from Plaintiff a debt owed a third party creditor, Comcast, using instrumentalities of interstate commerce, i.e. telephone and the mail.  (SOF, ¶2).  As such, Defendant is a "debt collector," and admits to the same.  (SOF, ¶9).

> **C.  Plaintiff's Alleged Obligation Is A "Debt."**

The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C § 1692a(5).  In the instant matter, Plaintiff's obligation to pay arose out of a transaction with Comcast for a modem used in his home.  (SOF, ¶1).  Therefore, the obligation was incurred for personal, family, and household purposes, and is a "debt."

## IX.    BECAUSE WHETHER DEFENDANT'S CONDUCT VIOLATED 15 U.S.C. § 1692d IS A QUESTION FOR THE JURY, SUMMARY JUDGMENT ON THIS CLAIM IS INAPPROPRIATE.

The FDCPA proscribes certain debt collector conduct that is oppressive, harassing, or abusive.  15 U.S.C. § 1692d.  The FDCPA prohibits a debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. 15 U.S.C. § 1692d.  The FDCPA specifies explicit conduct which is, by express statutory language, harassment or abuse.  15 U.S.C. § 1692d(1)-(6).

Among the conduct expressly prohibited is: "The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader," 15 U.S.C. § 1692d(2), and "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5).

Enumerated conduct prohibited by section 1692d is not, however, an exhaustive listing of conduct violative of the 15 U.S.C. § 1692d. *See Kizer v. American Credit & Collection*, 1990 WL 317475 (D. Conn. 1990) (holding that even though the defendant's conduct did not fall within one of the enumerated types of behavior specifically prohibited by 15 U.S.C. § 1692d that the listing included in the statute is not exhaustive and the statute clearly recognizes other violative behavior); *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383 (D. Del. 1991) (finding that even where the defendants' conduct did not fall within the specific types of conduct proscribed by subsections 15 U.S.C. § 1692d(1)-(6), Congress has authorized the courts to fill in the gaps left by the statute). Stated otherwise, the FDCPA includes a "catch-all" provision which prohibits conduct the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt.

### A.     Whether Conduct Is Harassing Is Determined From The Perspective Of A Consumer Whose Circumstances Make Him Relatively More Susceptible To Harassment.

"[C]laims under § 1692d should be viewed from the perspective of a consumer whose circumstances make him relatively more susceptible to harassment, oppression, or abuse." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985); *Arteaga v. Asset Acceptance, LLC*, 733 F. Supp. 2d 1218, 1226 (E.D. Cal. 2010); *Bryant v. Bonded Account Serv./Check Recovery, Inc.*, 208 F.R.D. 251, 256 (D. Minn. 2000); *Kavalin v. Global Credit & Collection Corp.*, 2011 WL 1260210, at *3 (W.D.N.Y. Mar. 31, 2011).

**B.** **Whether A Debt Collector's Conduct Is Harassing Is A Question Of Fact For The Jury.**

"Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury." *Jeter*, 760 F.2d at 1179.  "While recognizing that a debt collector should be afforded the opportunity to place follow up calls to a [consumer] . . . the matter of whether the follow up activities are reasonable is a factual dispute."  *Holland v. Bureau of Collection Recovery*, --- F. Supp. 2d ----, 2011 WL 3489111, at *3 (M.D. Fla. Aug. 2, 2011).  This is in line with the fact that "the majority of courts throughout the nation recognize that whether the nature and frequency of debt collection calls constitutes harassment is also a fact issue for the jury."  *Id.* (collecting cases).[2]

This is consistent with the law in the Fifth Circuit that questions involving a party's state of mind are generally reserved for the fact finder at trial, even if evidence is uncontroverted.  *See Thompson v. Syntroleum Corp.*, 108 F. App'x. 900, 902 (5th Cir. 2004); *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265 (5th Cir. 1991) ("When state of mind is an essential element of the nonmoving party's claim, it is less fashionable to grant summary judgment because a party's state of mind is inherently a question of fact which turns on credibility. Credibility determinations, of course, are within the province of the fact-finder.").

**C.** **15 U.S.C. § 1692d Is Not Limited To Harassing Language, But Prohibits Any Harassing Conduct.**

Defendant argues that because it did not use profanity, that Plaintiff's section 1692d(2) claim must fail.  However, the section prohibits both "obscene or profane language **or** language

---

[2] *See Rucker v. Nationwide Credit, Inc.*, 2011 WL 25300 (E.D. Cal. Jan. 5, 2011); *Brown v. Hosto & Buchan, PLLC*, 748 F. Supp. 2d 847 (W.D. Tenn. 2010); *Valentine v. Brock & Scott, PLLC*, 2010 U.S. Dist. Lexis 40532, at *11 (D.S.C. Apr. 26, 2010); *Krapf v. Nationwide Credit, Inc.*, 2010 WL 2025323, at *3-4 (C.D. Cal. 2010); *Kerwin v. Remittance Assistance Corp.*, 559 F. Supp. 2d 1117, 1124 (D. Nev. 2008); *Prewitt v. Wolpoff & Abramson, LLP*, 2007 WL 841778, at *3 (W.D.N.Y. Mar. 19, 2007); *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 506 (D. Md. 2004); *Joseph v. J.J. Mac Intyre Co.*, 238 F. Supp. 2d 1158, 1168 (N.D. Cal. 2002); *Kuhn v. Account Control Tech, Inc.*, 865 F. Supp. 1443, 1453 (D. Nev. 1994); *United States v. Central Adjustment Bureau, Inc.*, 667 F. Supp. 370, 376 (N.D. Tex. 1986), *affirmed*, 823 F.2d 880 (5th Cir. 1987); *Clark v. Quick Collect, Inc.*, 2005 WL 1586862, at *4 (D. Or. June 30, 2005).

the natural consequence of which is to abuse the hearer or reader."  15 U.S.C. § 1692d(2).  This is consistent with section 1692d's general prohibition against "any conduct the natural consequence of which is to harass, oppress, or abuse."  15 U.S.C. § 1692d.  Thus, the section is not limited to harassing language, but rather "any conduct."  Whether the natural consequence of Defendant's conduct was to harass a consumer whose circumstances make him relatively more susceptible to harassment is a question of fact in this case.

> **D.**  **Defendant's Conduct In This Case Was Harassing To A Consumer Whose Circumstances Make Him Relatively More Susceptible To Harassment.**

In this case, Defendant called Plaintiff on July 13, July 14, July 19, July 20, July 30, and August 5, 2010.  (SOF, ¶2).  Defendant first spoke with Plaintiff on July 14, 2010.  (SOF, ¶¶4, 13).  During this conversation, Plaintiff informed Defendant that he was at work, and that he worked offshore and would not be able to fax Defendant the email from Comcast showing he owed only $32.00 until he returned to shore.  (SOF, ¶¶5-6, 15-16).  At the close of the July 14, 2010 phone call, Plaintiff and Defendant reached an agreement that Plaintiff would fax Defendant the email when he returned to shore.  (SOF, ¶15).  Nevertheless, Defendant continued to call Plaintiff while he was at work offshore four additional times, during which Plaintiff would tell Defendant that he could not yet because he was at work.  (SOF, ¶¶2, 17-22).  At no time did Plaintiff refuse to send Defendant the email, contrary to Defendant's representation in its motion.  Even though Defendant knew that Plaintiff could not yet provide it with the email, it continued to call Plaintiff.  Defendant went so far as to state that it would "continue to harass" Plaintiff.  (SOF, ¶23).  In a separate conversation, Defendant stated that its conduct was harassing to Plaintiff.  (SOF, ¶24).  Just as Defendant itself stated, once it knew that Plaintiff could not yet provide it with the information it requested, it had no other purpose to call Plaintiff than to harass.  This is sufficient evidence on which a jury may conclude that the natural consequence of Defendant's conduct was to harass Plaintiff.

In this way, Defendant's relied-upon case law is distinguishable, as it is largely concerned only with the volume of calls placed. In this case, the volume itself is not the issue, but rather the purpose for which Defendant placed its calls. Defendant further relies on case law in which the court held that the number of calls evidenced "a difficulty in reaching Plaintiff rather than an intent to harass." (Doc. 20, ¶63). In this case, Defendant had no difficulty in reaching Plaintiff as Plaintiff answered all of Defendant's collection calls, save the first. (SOF, ¶¶3-4). Indeed, Plaintiff attempted to work with Defendant, but had to repeatedly explain his situation to Defendant. (SOF, ¶14-22). Yet, Defendant continued to call anyway. (SOF, ¶2).

> **E.      As A Matter Of Law, Defendant Violated Either § 1692d Or § 1692e.**

Defendant stated that it would "continue to harass" Plaintiff. (SOF, ¶23). This statement can be either true or false. If true, i.e. that Defendant has been and will continue to harass Plaintiff, then Defendant admitted to violating § 1692d. If false, then Defendant violated § 1692e by using false representations in connection with the collection of Plaintiff's debt.

**X.      BECAUSE DEFENDANT VIOLATED 15 U.S.C. § 1692e, DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON THIS ISSUE.**

The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The sixteen subsections of section 1692e provide a non-exhaustive list of practices that fall within such prohibited conduct. Proscribed action includes the false representation of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Section 1692e also includes a catch-all provision, prohibiting generally "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10).

The Federal Trade Commission's commentary on the FDCPA recognizes:

> Prohibited actions are not limited to the sixteen subsections listed as
> examples of activities that violate this provision. In addition, section
> 807(10), which prohibits the "use of any false representation or deceptive
> means" by a debt collector, is particularly broad and encompasses

> virtually every violation, including those not covered by the other
> subsections.

FTC Official Staff Commentary at § 807, 1, *available at* http://www.ftc.gov/os/statutes/fdcpa/ commentary.htm#807.

Thus, a debt collection practice may violate the FDCPA even if it does not fall within specific conduct enumerated by section 1692e. *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). Congress, recognizing that it would be impossible to foresee every type of deceptive collection misbehavior, expressly included in the FDCPA a general standard affording courts the ability to proscribe conduct not specifically addressed in section 1692e. One Senate Report reads:

> [T]his bill prohibits in general terms any harassing unfair or deceptive
> collection practice. This will enable the courts, where appropriate, to
> proscribe other improper conduct which is not specifically addressed.

S. Rep. No. 382, 95th Cong. at 4.

Under section 1692e, the test for deception is "the capacity of the statement to mislead; evidence of actual deception is unnecessary." *U.S. v. Nat. Fin. Servs., Inc.*, 98 F.3d 131, 139 (4th Cir. 1996). "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996). In other words, "the representation need not be deliberate, reckless, or even negligent to trigger liability—it need only be false." *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 495 (7th Cir. 2007). "Requiring a violation of § 1692e to be knowing or intentional needlessly renders superfluous § 1692k(c)." *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006). A violation of section 1692e does not depend on the state of mind of the debt collector:

> Section 1692e would be rendered superfluous if its violation needed to being done knowingly or intentionally; thus, § 1692k(c) must be construed to reach a commonsensical reading of § 1692 as a whole. *Clark*, 460 F.3d at 1176. That the FDCPA must be liberally construed to support its remedial nature, lends itself to arriving at the conclusion that the statute is a strict liability one, even if a false representation is unintentional. *Id.* Thus, . . . the FDCPA does not require knowledge on the part of the debt collector.

*Hepson v. J.C. Christensen & Associates, Inc.*, 2008 WL 4833097, at *4 (M.D. Fla. Nov. 5, 2008).

**A.**   **Defendant Violated 15 U.S.C. § 1692e(2)(A) By Falsely Representing The Amount Of Debt.**

In this case, Plaintiff owed a debt in the amount of $32.00.  (SOF, ¶1).  In its attempts to collect the debt, Defendant repeatedly asserted that Plaintiff owed $386.21.  (SOF, ¶¶11, 12, 18, 27).  Even after Plaintiff had completely resolved the debt, Defendant asserted that Plaintiff owed $386.21.  (SOF, ¶¶25, 27).

As a matter of law, this conduct violates 15 U.S.C. § 1692e(2)(A), as a false representation of the amount of debt.  *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) ("§ 1692e(2)(A) creates a strict-liability rule. Debt collectors may not make false claims, period.").  Significant, nowhere in its motion does Defendant argue that its representations as to the amount of debt were accurate.   Rather, Defendant attempts to argue that the misrepresentation was not intentional, or that it did not actually confuse Plaintiff.  However, as explained below, these arguments are unavailing.

**B.**   **It Is Irrelevant Whether A Consumer Is Actually Deceived By A Debt Collector's Conduct Under The FDCPA's Objective Least Sophisticated Consumer Standard.**

The least sophisticated consumer standard is an objective standard, and it is therefore irrelevant whether the consumer was actually deceived by the Defendant's conduct.  *See U.S. v.*

*Nat. Fin. Servs., Inc.*, 98 F.3d 131, 139 (4th Cir. 1996) ("the test is the capacity of the statement to mislead; evidence of actual deception is unnecessary."); *see also Tourgeman v. Collins Fin. Services, Inc.*, 2011 WL 3176453, at *4 (S.D. Cal. July 26, 2011) ("Clearly, the FDCPA's focus is on a debt collector's conduct, and not on whether a consumer suffers actual damages or is misled.").  "Because we apply an objective standard, the question is not whether this *particular* consumer was *actually* deceived, but instead the question is whether the objective unsophisticated consumer would be deceived."  *Gonzalez v. Kay*, 577 F.3d 600, 611 (5th Cir. 2009) (Jolly, J., dissenting) (emphasis in original).  This is consistent with the plain language of the statute, which focuses on the conduct of the debt collector: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.

## C.   Plaintiff Need Not Show That Defendant Made A False Representation Intentionally.

"Requiring a violation of § 1692e to be knowing or intentional needlessly renders superfluous § 1692k(c)."  *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006).  Section 1692k(c) provides for a bona fide error defense: "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c).  The FDCPA provides this defense, "[i]n lieu of a scienter requirement."  *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004).

1.     **The Bona Fide Error Defense Places The Burden Of Proof On The Defendant To Show, Among Other Things, That It Acted Unintentionally.**

The bona fide error defense is an affirmative defense that must be pleaded and proven, with which the debt collector bears the burden of proof. *Fox v. Citycorp Credit Services, Inc.*, 15 F.3d 1507, 1514 (9th Cir. 1994). "In carrying out the FDCPA's remedial scheme, courts have interpreted this affirmative defense narrowly." *Drossin v. National Action Financial Services*, 641 F. Supp. 2d 1314, 1321 (S.D. Fla. 2009) (collecting cases).

The purpose of a bona fide error defense is not to shield debt collectors from systemic errors or abuses. *Martinez v. Albuquerque Collection Servs., Inc.*, 867 F. Supp 1495, 1502 (D.N.M. 1994). Nor does the bona fide error defense apply to mistakes of law. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605 (2010). Rather, the purpose of the bona fide error defense is to protect debt collectors in cases of inadvertent clerical errors. *Munoz v. Pipestone Fin., LLC*, 397 F. Supp. 2d 1129, 1132 (D. Minn. 2005) ("The purpose of the bona-fide-error defense is to protect debt collectors from inadvertent clerical errors."); *Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996) ("Generally the term 'error' is limited to clerical mistakes, such as minor numerical mistakes in transposing numbers."); *Baker v. GC Services Corp.*, 677 F.2d 775, 779 (9th Cir. 1982) (explaining that the bona fide error defense under the FDCPA is virtually identical to the bona fide error defense under the Truth in Lending Act ("TILA")), quoting *Palmer v. Wilson*, 502 F.2d 860, 861 (9th Cir. 1974) ("It has been uniformly held that unintentional clerical errors ... are the only violations this section (of the TILA) was designed to excuse.").

"Thus to use the defense, the defendant bears the burden to show (1) that the presumed statutory violation was not intentional (2) and resulted from a bona fide error, and (3) that the

defendant maintained procedures reasonably adapted to avoid any such error." *Liu v. Arrow Fin. Services, LLC*, CIV.A. H-08-3116, 2010 WL 1994190, at *3 (S.D. Tex. May 17, 2010). "The failure to meet any one of those three requirements is fatal to the defense." *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1353 (11th Cir. 2009) (citing *Johnson v. Riddle*, 443 F.3d 723, 727-28 (10th Cir. 2006)).

Therefore, in this case, Defendant bears the burden to show, among other things, that its violation was unintentional. As the Fifth Circuit has explained, "the extent to which such noncompliance was intentional are factors the court must consider, among other relevant factors in determining the amount of liability in any individual action under the Act. § 1692k. Consequently, the fact that violations were innocuous and not abusive may be considered only in mitigating liability, and not as defenses under the Act." *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1239 (5th Cir. 1997). Absent the Defendant's showing that it meets all the requirements of the bona fide error affirmative defense, its argument that its violation may have been unintentional is unavailing.

### 2. Defendant Has Not Shown That It Has Met Its Burden Under The Bona Fide Error Defense.

"As the text of § 1692k(c) indicates, the procedures component of the bona fide error defense involves a two-step inquiry: first, whether the debt collector 'maintained'—*i.e.,* actually employed or implemented—procedures to avoid errors; and, second, whether the procedures were 'reasonably adapted' to avoid **the specific error at issue**." *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006) (emphasis added).

"If the bona fide error defense is to have any meaning in the context of a strict liability statute, then a showing of 'procedures reasonably adapted to avoid any such error' must require more than a mere assertion to that effect. The procedures themselves must be explained, along

with the manner in which they were adapted to avoid the error." *Reichert v. National Credit Systems, Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008); *see also Dechert v. Cadle Co.*, 2003 WL 23008969, at *4 (S.D. Ind. Sept. 11, 2003) (holding defendant could not show bona fide error defense when "the defendant offers **no evidence of what the error was in this case and how the policies and procedures in place were designed to address such a potential error**. Its assertions are much more broad and ambiguous in nature.") (emphasis added).

In this case, Defendant has produced no evidence to meet its burden.  First, Defendant fails to articulate what errors it made.  Second, it does not show those errors were bona fide.  Third, while it asserts that its conduct was unintentional, it submits no evidence showing the same.  Fourth, nowhere does Defendant explain what procedures it has in place to avoid such a violation. Fifth, Defendant fails to explain how any procedures were reasonably adapted to avoid any specific error committed in this case.

Defendant asserts that it relied upon information supplied by the creditor.  However, Defendant submits no evidence showing the same.  As well, reliance on the information of the creditor, without more, is insufficient to permit Defendant to escape liability.  *See, e.g., Kasalo v. NCSPLUS Inc.*, CIV.A. 10 C 1643, 2011 WL 2582195, at *4 (N.D. Ill. June 27, 2011) ("It is not enough to blindly rely on creditors' representations. The FDCPA is a strict liability statute, imposing liability even without fault.").  Reliance on the creditor's information "cannot . . . act as a substitute for the maintenance of adequate procedures to avoid . . . mistakes."  *Reichert*, 531 F.3d at 1007.  Rather, "[t]o qualify for the bona fide error defense under the FDCPA, the debt collector has an affirmative obligation to maintain procedures designed to avoid discoverable errors."  *Id.*; *Owen v. I.C. System, Inc.*, 629 F.3d 1263, 1276-77 (11th Cir. 2011).  As explained above, because Defendant has not shown the maintenance of any such procedures, nor satisfied

any of the other elements of the bona fide error defense, Defendant is not entitled to summary judgment on this basis. *See Kasalo*, 2011 WL 2582195, at *4 ("Defendants bear the burden to establish all the elements of an affirmative defense . . . and here they fail to even cite § 1692k. Their silence about the procedures in place to prevent FDCPA violations makes summary judgment inappropriate.") (citing *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 94849 (9th Cir. 2011)).

> **D.      The Consumer Need Not Request Verification Of The Debt As A Prerequisite To Bringing A Claim Under § 1692e(2)(A).**

The FDCPA contains no requirement that the consumer dispute the debt or request validation from the debt collector as a precondition to bringing a claim under 15 U.S.C. § 1692e(2)(A).  *See generally* 15 U.S.C. § 1692 *et seq.*  Lacking any express direction from Congress, it is inappropriate for a court to read such a requirement into the statute, as one court explained:

> While a few (out-of-Circuit) courts have accepted the argument that the Defendants advance here, *see Richmond v. Higgins,* 435 F.3d 825 (8th Cir.2006); *Bleich v. The Revenue Maximization Group, Inc.,* 233 F.Supp.2d 496 (E.D.N.Y.2002), this Court isn't one of them. **When Congress wants to require plaintiffs to use non-judicial remedies before filing suit, Congress says so.** *See, e.g.,* 42 U.S.C. § 2000e–5(f)(1) (permitting private suits under Title VII only after prospective plaintiffs have submitted them to the EEOC for possible mediation); 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). But **no provision of the FDCPA explicitly requires debtors to use the informal debt verification procedure—unlike debt collectors who are explicitly forbidden from making false statements about debts in the first instance**, 15 U.S.C. § 1692e(2)(A). Given the allocation of lawmaking functions to the legislative branch under our Constitution, the Court should always hesitate before concluding that Congress somehow "forgot" to mention a legal requirement in its statutes. This normal hesitation is, however, even further heightened with respect to the FDCPA, a remedial statute that courts interpret in favor of debtors, *cf. Gammon v. GC Servs.*

> *Ltd. Partnership,* 27 F.3d 1254, 1257 (7th Cir.1994) (judging the potential
> deceptiveness of statements under the FDCPA through the lens of an
> "unsophisticated consumer," rather than a reasonable consumer).
> Accordingly, the Court will enforce the FDCPA as it is written, not as the
> Defendants wish that it had been written; requesting informal debt
> verification is not a precondition to suit.

*Brown v. Palisades Collection, LLC*, 1:11-CV-00445-JMS, 2011 WL 2532909, at *3 (S.D. Ind.

June 24, 2011) (emphasis added).

In addition, Plaintiff has also alleged a violation of 15 U.S.C. § 1692g, discussed *infra*.

Section 1692g requires the debt collector to provide the consumer with a notice of, among other

things, his or her right to dispute the debt and request verification.  If the consumer never

receives the statutory notices, he or she would not be aware of these rights.  The least

sophisticated consumer cannot be expected to take advantage of a procedure he or she does not

know exists.  Nevertheless, Plaintiff in this case did dispute the validity of a portion of the debt

with Defendant orally.  (SOF, ¶¶14, 19).  Section 1692g(a)(3) provides that the same is

appropriate.  *See, e.g., Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1081 (9th Cir. 2005);

*Rosado v. Taylor*, 324 F. Supp. 2d 917, 928-29 (N.D. Ind. 2004); *In re Sanchez*, 173 F. Supp. 2d

1029, 1034 (N.D. Cal. 2001); *Harvey v. United Adjusters*, 509 F. Supp. 1218, 1221 (D. Or.

1981).  Therefore, Defendant cannot rely on this argument to avoid liability for its false

representations.

### E.   Plaintiff May Maintain A Claim Under 15 U.S.C. § 1692e(10), Notwithstanding A Claim Under § 1692e(2)(A).

Given its remedial nature, and to ensure the protection of consumers, the various sections

of the FDCPA tend to overlap.  For this reason, "it is not unusual for an action to violate more

than one FDCPA provision."  *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507, 1516, n. 10

(9th Cir. 1994) (citing FTC Official Staff Commentary on the FDCPA, 53 Fed. Reg. at 50,109,

*available at* http://www.ftc.gov/os/statutes/fdcpa/commentary.htm ("In many cases several different sections or subsections of the FDCPA may apply to a given factual situation. This results from the effort by Congress in drafting the FDCPA to be both explicit and comprehensive, in order to limit the opportunities for debt collectors to evade the underlying legislative intention.")).   To this end, courts routinely find violations of multiple subsections of 15 U.S.C. § 1692e based on the same conduct.  *See, e.g., Clomon v. Jackson*, 988 F.2d 1314, 1320-21 (2d Cir. 1993); *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 26 (2d Cir. 1989); *Gervais v. Riddle & Associates, P.C.*, 479 F. Supp. 2d 270, 277 (D. Conn. 2007).

Therefore, although Defendant's false representations as to the amount of the debt violate section 1692e(2)(A), they also violate section 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt."   15 U.S.C. § 1692e(10).

**F.      Defendant Used False Representations Or Deceptive Means to Collect Plaintiff's Debt, In Violation Of 15 U.S.C. § 1692e(10), Apart From Its Misrepresentations As To The Amount Of Debt.**

Defendant in this case stated that it would "continue to harass" Plaintiff until it was provided proof of the debt's satisfaction.  (SOF, ¶23).   Notwithstanding that Defendant did harass Plaintiff in connection with the collection of Plaintiff's debt, discussed *supra*, if Defendant did not harass Plaintiff, then stating so was a false representation used in effort to collect the debt.   As well, if Defendant did not continue to harass Plaintiff further, then Defendant's statement was a false representation.[3]   As a matter of law and of logic, Defendant's statement necessarily violated either § 1692d or § 1692e.

---

[3] Defendant's statement that it would continue to harass Plaintiff also violates 15 U.S.C. § 1692e(5), which prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken."

XI.   **DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS UNDER TEX. FIN. CODE § 392.304(a)(19).**

As Defendant acknowledges, "[t]he FDCPA and the TDC[P]A are very similar." *Cox v. Hilco Receivables, L.L.C.*, 726 F. Supp. 2d 659, 666 (N.D. Tex. 2010). "Unlike the FDCPA, the list of violative practices in the TDC[P]A is expressly exhaustive." *Id.* at 667. However, like the FDCPA, the TDCPA includes a catch-all provision, which prohibits debt collectors from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." Tex. Fin. Code § 392.304(a)(19).

For a statement to constitute a misrepresentation under the TDCPA, Defendant must have made a false or misleading assertion. *Reynolds v. Sw. Bell Tel., L.P.*, No. 2–05–356–CV, 2006 WL 1791606, at *7 (Tex. App. – Fort Worth June 29, 2006, pet. denied). A collection notice or balance statement misstating the amount owed on a debt constitutes a misleading assertion regarding the amount of that debt under the TDCPA. *See Baker v. Countrywide Home Loans, Inc.*, 3–08–cv–0916, 2009 WL 1810336, at *7 (N.D. Tex. June 24, 2009); *see also Steele v. Green Tree Servicing, LLC*, No. 3:09–cv–0603, 2010 WL 3565415, at *5, n. 6 (N.D. Tex. Sept. 7, 2010).

Again, nowhere in its motion does Defendant argue that its assertions as to the amount of debt Plaintiff owed were accurate. For the reasons stated, *supra*, as to why Defendant violated 15 U.S.C. § 1692e, it has violated Tex. Fin. Code § 392.304(a)(19) as well.

XII.  **DEFENDANT'S TDCPA VIOLATION CONSTITUTES A *PER SE* VIOLATION OF THE DTPA, AND IS THEREFORE NOT ENTITLED TO SUMMARY JUDGMENT.**

The TDCPA expressly provides: "A violation of this chapter is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and is actionable under that subchapter." Tex. Fin. Code § 392.404(a). For this reason, "[v]iolations under the TDC[P]A are

25

automatically violations of the Texas Deceptive Trade Practices Act."  *Hare v. Hosto & Buchan,*

*PLLC*, 774 F. Supp. 2d 849, 853 (S.D. Tex. 2011).  Because Defendant violated the TDCPA,

discussed *supra*, Defendant is liable to Plaintiff under the DTPA.

## XIII.  SUMMARY JUDGMENT IS INAPPROPRIATE ON PLAINTIFF'S CLAIM UNDER 15 U.S.C. § 1692g BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST.

Congress included in the FDCPA debt validation provisions in order to guarantee that

consumers would receive adequate notice of their legal rights.  See S. Rep. No. 382, 95th Cong.,

1st Sess. 4, 8, *reprinted in* 1977 U.S. Code Cong. & Admin. News 1695, 1699, 1702.  The

FDCPA "establishes certain rights for consumers whose debts are placed in the hands of

professional debt collectors for collection, and requires that such debt collectors advise the

consumers whose debts they seek to collect of specified rights."  *DeSantis v. Computer Credit,*

*Inc.*, 269 F.3d 159, 161 (2d Cir. 2001); *Frey v. Gangwish*, 970 F.2d 1516, 1519 (6th Cir. 1992).

To this end, the FDCPA at section 1692g(a) provides:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

> ### A.   Defendant Did Not Provide The Disclosures Required By Section 1692g Orally To Plaintiff During Its Initial Communication.

Defendant's initial communication to Plaintiff in effort to collect Plaintiff's debt took place on July 14, 2010, when it called Plaintiff and spoke with him over the telephone. (SOF, ¶¶2, 4, 13). During this telephone communication, Defendant did not provide Plaintiff with the disclosures required by 15 U.S.C. § 1692g(a), save the name of the creditor to whom the debt was owed. (SOF, ¶13). Defendant did not properly provide the disclosure pursuant to section 1692g(a)(1), because it did not correctly state the amount of debt owed. (SOF, ¶12).

> ### B.   There Exists A Genuine Issue Of Fact As To Whether Defendant's Alleged Initial Collection Letter Would Have Contained The Notices Required By Section 1692g, If Sent.

Notably, Defendant did not produce the initial collection letter it alleges to have sent Plaintiff on July 13, 2010. In its motion, it merely asserts that the letter it allegedly sent to Plaintiff was based on a form letter attached at Def. App. 0074. (See Doc. 20, ¶90). However, it provides no evidence to substantiate this assertion. In addition, the document referenced at Def. App. 0074 is not a form letter, and it does not contain the notices required by section 1692g. (See Doc. 20-1 at p. 75). While Defendant appears to provide the referenced form letter at Def. App. 0076, it also provides a form letter at Def. App. 0077. (See Doc. 20-1 at pp. 77-78). This in and of itself creates a genuine issue of fact as to the content of the purported July 13, 2010 letter to Plaintiff, specifically regarding which form letter it was based on, if either.

As well, Plaintiff's testimony may be used to prove the content of the letter because the original has been lost. Fed. R. Evid. 1004(1); (SOF, ¶26). "[T]he generally accepted rule [is]

that if the party relying upon the writing can prove that a writing existed and has been lost or destroyed, he is relieved of the burden of producing the original and can present secondary evidence of its contents." *Klein v. Frank*, 534 F.2d 1104, 1107-08 (5th Cir. 1976).  Any kind of secondary evidence is then admissible.  *See, e.g., U.S. v. Walker*, 60 Fed. Appx. 637, 637 (8th Cir. 2003) ("it is well settled that the contents of a lost writing may be proved by 'any kind of secondary evidence ranging from photographs and handwritten copies to oral testimony of a witness.' ") (quoting *U.S. v. Gerhart*, 538 F.2d 807, 809 (8th Cir. 1976)).

### C.   Even Accepting Defendant's Allegations As True, Defendant Still Failed To Comply With Section 1692g(a)(1).

Even if Defendant did in fact send Plaintiff a letter that contained the statements required by 15 U.S.C. § 1692g(a)(2)-(5), there is no dispute that the amount of debt Defendant asserted Plaintiff to owe was listed as $386.21.  This was the amount Defendant asserted that Plaintiff owed orally during its telephone communications with Plaintiff.  (SOF, ¶¶12, 18).  Defendant's collection notes for Plaintiff's account reflect that amount asserted to be owed was $386.21.  (SOF, ¶11).  Even as of October 25, 2010, Defendant continued to assert that Plaintiff owed a debt in the amount of $386.21.  (SOF, ¶27).  Therefore, even if Defendant sent its initial collection letter on July 13, 2010, and even should the letter properly contain the disclosures required by section 1692g(a)(2)-(5), Defendant's letter would not have correctly stated the amount of the debt, as required by 15 U.S.C. § 1692g(a)(1), because the correct amount of debt owed was $32.00 as of July 13, 2010.  (SOF, ¶1).  Therefore, Defendant cannot establish that it complied with 15 U.S.C. § 1692g(a)(1), and summary judgment must be denied on this basis.

XIV.   **PLAINTIFF CAN SHOW SUFFICIENT EVIDENCE OF ACTUAL DAMAGES CAUSED BY DEFENDANT'S CONDUCT.**

A.     **Denying Plaintiffs An Adequate Remedy For Emotional Damages Risks Undermining The Entire Statutory Scheme Of The FDCPA.**

Courts construing the FDCPA have noted Congress's concern for emotional harms in drafting the FDCPA. *See Crossley v. Lieberman*, 90 B.R. 682, 692 (E.D. Pa. 1988); *Teng v. Metropolitan Retail Recovery, Inc.,* 851 F. Supp. 61, 68-70 (E.D.N.Y. 1994).  The Senate Report underscored the role of private plaintiffs in combating abusive debt collection practices. S. Rep. 95-382, at 5, U.S.Code Cong. & Admin.News 1977, pp. 1695, 1700 (FDCPA will be "primarily self-enforcing" because "consumers who have been subjected to collection abuses will be enforcing compliance.").  If courts demanded plaintiffs victimized by these practices meet the tort standard for emotional distress, recovery might often, if not nearly always be unlikely. *See Greene v. Rash*, 89 F.R.D. 314, 316 (E.D. Tenn. 1980) ("the aggrieved plaintiff would not be able to recover any actual damages under 15 U.S.C. § 1692k(a)(1), except to the extent that he or she might have suffered some related out-of-pocket expenses."); *Smith, supra*, 124 B.R. at 188 n. 6 ("Existing state laws would, in many cases afford no relief at all to the victim[s] of abusive debt collection practices.").  Denying plaintiffs an adequate remedy risks undermining the entire statutory scheme.  *Davis v. Creditors Interchange Receivable Management, LLC*, 585 F. Supp. 2d 968, 973-74 (N.D. Ohio 2008).

B.     **Plaintiff Need Not Present Expert Testimony Or Proof Of Medical Records To Establish Entitlement To, And Amount Of, Actual Damages Under The FDCPA.**

A debt collector who fails to comply with any provision of the FDCPA is liable for actual damages sustained as a result of such a failure.  15 U.S.C. § 1692k(a)(1).  Actual damages not only include any out of pocket expenses, but also damages for personal humiliation,

embarrassment, mental anguish or emotional distress. *Smith v. Law Offices of Mitchell N. Kay,* 124 B.R. 182, 185 (D. Del. 1991); *Kafele v. Lerner, Sampson & Rothfuss, L.P.A.*, 2005 WL 1379107 (S.D. Ohio 2005); *see also McGrady v. Nissan Motor Acceptance Corp.,* 40 F. Supp. 2d 1323 (M.D. Ala. 1988) (holding that claimed damages for mental anguish resulting from violations of the FDCPA were actual damages with unlimited recovery); *Smith v. Law Offices of Mitchell N. Kay,* 124 B.R. 182, 185 (D. Del. 1991) (finding that actual damages for emotional distress are permitted under FDCPA).

Notably, Defendant cites no case law interpreting the standard for recovering emotional distress damages under the FDCPA. "With respect to actual damages, which may include compensation for emotional distress, state law requirements that must be proven to establish negligent or intentional infliction of emotional distress are inapplicable." *In re Maxwell,* 281 B.R. 101, 118 (Bankr. D. Mass. 2002), citing *Teng v. Metropolitan Retail Recovery Inc.,* 851 F. Supp. 61, 68-69 (E.D.N.Y. 1994); *Davis v. Creditors Interchange Receivable Mgmt., LLC*, 585 F. Supp. 2d 968, 971 (N.D. Ohio 2008); *Donahue v. NFS, Inc.,* 781 F. Supp. 188, 193-94 (W.D.N.Y. 1991); *Smith v. Law Offices of Mitchell N. Kay,* 124 B.R. 182, 185 (D. Del. 1991); *Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), aff'd, 868 F.2d 566 (3d Cir. 1989). "The analysis of whether damages for emotional distress have been proven under this statute need not rise to the level required to prove the tortious infliction of emotional distress. . . . [V]iolations of the FDCPA, by their very nature, (e.g., abusive, deceptive or unfair debt collection practices), are those kinds of actions which may be expected to cause emotional distress and, therefore, the availability of damages for such distress is of paramount importance." *In re Littles*, 75 B.R. 240, 242 (Bankr. E.D. Pa. 1987).

Significant, the FDCPA does not require any specific form of proof regarding actual damages, and a plaintiff's testimony alone can support an award of actual damages under the FDCPA. *See, e.g., Sweetland v. Stevens & James, Inc.*, 563 F. Supp. 2d 300, 303-304 (D. Me. 2008) (awarding emotional distress damages to plaintiff in FDCPA case even though no documentary evidence or expert testimony was submitted); *Myers v. LHR, Inc.*, 543 F. Supp. 2d 1215, 1218 (S.D. Cal. 2008) (holding "sleeplessness, upset, and embarrassment" sufficient to support award of actual damages for emotional distress); *Nelson v. Equifax Info. Services, LLC*, 522 F. Supp. 2d 1222, 1235 (C.D. Cal. 2007) (finding that the plaintiff's "testimony alone can sufficiently establish emotional distress damages, such that a jury could find in her favor on that issue," notwithstanding the defendant's contention that medical or psychological evidence was required); *McCammon v. Bibler, Newman & Reynolds, P.A.*, 493 F. Supp. 2d 1166, 1172 (D. Kan. 2007) (noting a lack of any authority for the proposition that a plaintiff cannot recover actual damages under the FDCPA without expert testimony); *Gervais v. O'Connell, Harris & Associates, Inc.*, 297 F. Supp. 2d 435 (D. Conn. 2003) (plaintiff awarded $1,500 for emotional and mental distress for the debt collector's violations of the FDCPA based solely on plaintiff's testimony); *In Re Hart*, 246 B.R. 709, 732 (Bankr. D. Mass. 2000) (accepting plaintiff's testimony that he was angered, frustrated, and emotionally distressed by defendant in awarding emotional distress damages in FDCPA case).

### C.   Actual Damages For Mental Anguish Are Similarly Available Under The TDCPA.

Defendant cites case law holding that evidence of mental strain, worry or embarrassment is insufficient to sustain a claim for mental anguish.   While this is the general rule in certain cases, it has been recognized in a longstanding line of Texas case law that the same does not apply in actions brought under the TDCPA.

Texas courts have "expressly ruled that an action for unreasonable debt collection efforts may be maintained absent a plea of physical illness or injury." *Campbell v. Beneficial Finance Co. of Dallas*, 616 S.W.2d 373, 375 (Tex. App. – Texarkana 1981).  As one early Texas Court of Appeals case explained:

> It is urged that the actual damage award was not supported by evidence because damages for mental anguish cannot be recovered unless there is also physical illness or injury. **As to common law torts, that has been the general rule in Texas for many years. But we are dealing with a new statutory tort where the statutes expressly give a right of action for oppression, harassment or abuse resulting from certain prohibited practices.** Moreover, the decisions now recognize a right of action for mental anguish alone when the injury is essentially mental and subjective or where the injury is an unpermitted and intentional invasion of a personal right.

*Ledisco Financial Services, Inc. v. Viracola*, 533 S.W.2d 951, 957 (Tex. App. – Texarkana 1976) (emphasis added) (citing *Billings v. Atkinson*, 489 S.W.2d 858 (Tex. 1973); and *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627 (Tex. 1967)).

This rule continues to be good law today, as the Southern District of Texas recently recognized:

> In his deposition testimony, Flores states that because he had to continue to pay his debt to Vanderbilt when it had been released, this put stress on him and his family. [] King states that as a result of the legal proceedings instituted by Vanderbilt against him he suffers "constant worry." [] Counter–Plaintiffs have presented no other evidence to support their allegations that they have suffered mental anguish as a result of Vanderbilt's collection efforts. However, statements of the afflicted party can in some cases be sufficient to support claims for mental anguish damages. *See South Tex. Freightliner, Inc. v. Muniz*, 288 S.W.3d 123, 135 (Tex.App.2009) (upholding jury verdict on the issue of mental anguish damages in a malicious prosecution case when the only evidence of mental anguish was plaintiff's statements to his attorney that attending trial made him sad and angry, finding that this sufficed to provide "direct evidence of the 'nature, duration, or severity' " of plaintiff's mental anguish) (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex.1995)).

> In addition, Texas courts have recognized a more lenient standard of
> proof may apply to claims for mental anguish in unfair debt collection
> cases.

*Vanderbilt Mortg. and Finance, Inc. v. Flores*, 746 F. Supp. 2d 819, 845 (S.D. Tex. 2010)

(citing *Campbell*, 616 S.W.2d at 375; and *Ledisco Financial Services, Inc.*, 533 S.W.2d at

957).

Therefore, a plaintiff suing under the TDCPA may recover damages for mental

anguish based solely on testimony. *See id.*; *see also Brown v. Oaklawn Bank*, 718 S.W.2d

678, 680 (Tex. 1986) (holding that damages for "serious upset" and "strain of overall

situation" are recoverable under the TDCPA); *Green Tree Financial Corp. v. Garcia*, 988

S.W.2d 776, 784-85 (Tex. App. – San Antonio 1999) (holding damages for loss to character and

reputation recoverable in unfair debt collection action brought under TDCPA and DTPA).

## D.   Plaintiff's Testimony Presents Sufficient Evidence To Permit A Jury To Award Actual Damages.

In this case, Plaintiff testified that Defendant's conduct disrupted Plaintiff's daily routine,

as, among other things, he was forced to take time out of his busy work schedule.  (SOF, ¶28).

Plaintiff was reprimanded at work for taking Defendant's phone calls.  (SOF, ¶29).  Defendant's

conduct disrupted Plaintiff's ability to fall asleep and caused him to lose sleep.  (SOF, ¶30).  This

is especially significant due to the nature of Plaintiff's work, in that he gets less opportunity to

sleep than others.  (SOF, ¶30).  Due to Defendant's conduct Plaintiff has had to take sleeping

medication in order to sleep normally.  (SOF, ¶30).  Plaintiff has never before required

medication to sleep.  (SOF, ¶31).  Now he must take medication to fall asleep each week.  (SOF,

¶31).  This is sufficient evidence to permit a jury to award actual damages, and therefore

summary judgment is properly denied on this issue.

## TCPA CLAIMS

## XV.   FEDERAL DISTRICT COURTS HAVE AUTHORITY TO DECIDE CASES UNDER THE TCPA.

The Sixth Circuit, through a footnote to its 2009 opinion in *Charvat v. GVN Mich., Inc*., called attention to "serious questions" undermining the view that federal district courts do not have federal-question jurisdiction over claims under the TCPA:

> We note that the existence or non-existence of federal-question jurisdiction over private TCPA claims is not a settled question. Although six federal circuit courts have concluded that federal courts do not have federal-question jurisdiction over private TCPA claims, *Murphey v. Lanier,* 204 F.3d 911, 915 (9th Cir.2000); *Foxhall Realty Law Offices, Inc. v. Telecomms. Premium Servs., Ltd.,* 156 F.3d 432, 435 (2d Cir.1998); *ErieNet, Inc. v. Velocity Net, Inc.,* 156 F.3d 513, 519 (3d Cir.1998); *Nicholson v. Hooters of Augusta, Inc.,* 136 F.3d 1287, 1289 (11th Cir.1998); *Chair King, Inc. v. Houston Cellular Corp.,* 131 F.3d 507, 514 (5th Cir.1997); *Int'l Sci. & Tech. Inst., Inc. v. Inacom Commc'ns, Inc.,* 106 F.3d 1146, 1156 (4th Cir.1997), a decision from the Seventh Circuit and then-Judge Alito's dissent from a Third Circuit opinion raise serious questions about the majority view, *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446, 450–51 (7th Cir.2005) (Easterbrook, J., joined by Posner & Rovner, J.J.); *ErieNet,* 156 F.3d at 521–23 (Alito, J., dissenting). Because, however, [the plaintiff] did not assert federal-question jurisdiction in his complaint and has not contested the district court's statement that federal-question jurisdiction was not present, we will not address this question here.

*Charvat v. GVN Michigan, Inc.*, 561 F.3d 623, 627 (6th Cir. 2009).

On December 10, 2010, the Sixth Circuit held that federal district courts have federal-question jurisdiction over claims under the TCPA.  *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010).  The Sixth Circuit's decision is in line with Judge Easterbrook's majority opinion in *Brill v. Countrywide Home Loans, Inc.*, 427 F. 3d 446 (7th Cir. 2005), and then-Judge Alito's dissent in *ErieNet, Inc. v. Velocity Net Inc.*, 156  F.3d 513 (3d Cir. 1998).

A.     **The Sixth Circuit Held That Federal District Courts Have Federal-Question Jurisdiction Over Claims Under The TCPA.**

The Sixth Circuit has held that federal district courts have "federal-question jurisdiction over the claims under the Telephone Act." *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 463 (6th Cir. 2010).  The Sixth Circuit very recently re-affirmed this holding.  *Charvat v. NMP, LLC*, --- F.3d ----, 2011 WL 3805618, at \*4 (6th Cir. Aug. 30, 2011).

In holding that the TCPA confers subject matter jurisdiction upon federal district courts to decide disputes there under, the Sixth Circuit acknowledged that it, as well as several other courts of appeals, had previously taken a "different view."  *Charvat*, 630 F.3d at 463. (citing *Dun-Rite Constr., Inc. v. Amazing Tickets, Inc.,* 2004 WL 3239533 (6th Cir. 2004), *Foxhall Realty Law Offices, Inc. v. Telecomm. Premium Servs., Ltd.,* 156 F. 3d 432 (2d Cir.1998); *Int'l Sci. & Tech. Inst., Inc. v. Inacom Commc'ns, Inc.,* 106 F. 3d 1146 (4th Cir.1997)).  The Sixth Circuit continued: "But *Dun-Rite* is an unpublished, unsigned order, and it (like the other courts of appeals decisions) predates the Supreme Court's decision in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,* 545 U.S. 308, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005)." *Id.*

Against the backdrop of *Grable* – and while recognizing that the TCPA expressly provides for a private right of action in state court, and that the TCPA does not contain a provision expressly authorizing a private right of action in federal court – the Sixth Circuit noted that although such provisions "may suggest that Congress anticipated that the Act would be privately enforced primarily in state court . . . they do not establish that such claims may proceed only in state court." *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 464 (6th Cir. 2010).  The court pointed out that to so hold would lead to an absurd result.  *Id.* ("Otherwise, the Act would preclude even federal-diversity jurisdiction, *see* 28 U.S.C. § 1332, and no court of appeals to our

knowledge has reached that conclusion, and several have rejected it, *see, e.g., U.S. Fax Law Ctr., Inc. v. iHire, Inc.,* 476 F.3d 1112, 1117–18 (10th Cir.2007); *Gottlieb v. Carnival Corp.,* 436 F.3d 335, 340–41 (2d Cir.2006) (Sotomayor, J.); *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446, 450 (7th Cir.2005).").

The Sixth Circuit further explained its reasoning:

> When Congress enacted this legislation, the possibility of creating *exclusive* jurisdiction was not beyond the legislature's sight. Elsewhere in the Telephone Act, § 227(f)(2) creates exclusive federal jurisdiction over Telephone Act claims brought by state attorneys general: "The district courts of the United States ... shall have *exclusive jurisdiction* " over such actions. 47 U.S.C. § 227(f)(2) (emphasis added). Section 227(f)(2) "is explicit about exclusivity, while § 227(b)(3) is not; the natural inference is that the state forum mentioned in § 227(b)(3) is optional rather than mandatory." *Brill,* 427 F.3d at 451. Because different words imply differences in meaning, we do not think the word "may" in §§ 227(b)(3) and 227(c)(5) means that state courts have "exclusive" jurisdiction over Telephone Act claims. *See id.*
>
> The removal statute points in the same direction. Section 1441(a) authorizes a defendant to remove to federal court any claim "arising under" federal law, "[e]xcept as otherwise *expressly* provided by Act of Congress." 28 U.S.C. § 1441(a), (b) (emphasis added). Statutory permission to litigate a federal claim in state court does not expressly remove a district court's federal-question (or for that matter diversity) jurisdiction. *See Breuer v. Jim's Concrete of Brevard, Inc.,* 538 U.S. 691, 696–97, 123 S.Ct. 1882, 155 L.Ed.2d 923 (2003); *Brill,* 427 F.3d at 450.

*Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 464 (6th Cir. 2010); *see also Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1164 (S.D. Ind. 1997) ("Noting that repeals by implication are not favored, we reason[] that if Congress had intended to provide for exclusive state jurisdiction, it would have done so with clear mandatory language, rather than using the permissive word 'may'. . . . [H]ad Congress intended to supersede the federal question jurisdiction provided by § 1331 and instead provide for exclusive state court jurisdiction, it could and would have done so with clear language to that effect.").

The TCPA does not divest federal district courts of the federal-question jurisdiction they already possess under 28 U.S.C. § 1331. "An express divesting of federal-question jurisdiction over an action filed under a federal law may not be done *sotto voce*." *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 464 (6th Cir. 2010). If Congress did not intend that federal district courts were to decide disputes under the TCPA, all that it needed to do was say so – it did not. *Id.*

### B.    The Seventh Circuit Has Also Held That The Reasoning Employed By The Fifth Circuit In *Chair King* Is Irreconcilable With Recent Opinions Of The Supreme Court.

Defendant relies upon the decision of *Chair King, Inc. v. Houston Cellular Corp.*, 131 .3d 507 (5th Cir. 1997). In *Brill v. Countrywide Home Loans, Inc.*, the Seventh Circuit – referencing not only *Chair King*, but also *Foxhall Realty Law Offices, Inc. v. Telecommunications Premium Services, Ltd.*, 156 F.3d 432 (2d Cir. 1998); *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513 (3d Cir. 1998); *International Science & Technology Institute, Inc. v. Inacom Communications, Inc.*, 106 F.3d 1146 (4th Cir.1997); *Murphey v. Lanier*, 204 F.3d 911 (9th Cir. 2000); and *Nicholson v. Hooters of Augusta, Inc.*, 136 F.3d 1287 (11th Cir.1998) – stated: "These decisions can not be reconciled with either *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, --- U.S. ----, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005), or *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 123 S. Ct. 1882, 155 L. Ed. 2d 923 (2003), both of which came after all of the six decisions to which we have referred." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 450 (7th Cir. 2005). Like the Sixth Circuit, the Seventh Circuit reasoned: "But if state jurisdiction really is 'exclusive,' then it knocks out § 1332 as well as § 1331." *Id.*

The Seventh Circuit also concluded that permission to litigate a federal claim in state court does not foreclose federal-question jurisdiction. *Id*. Analyzing the Supreme Court's holdings in *Grable* and *Breuer*, the Court observed:

> *Grable* resolved a conflict in the Supreme Court's own decisions by holding that federal jurisdiction does not depend on the existence of a private right of action under federal law. And *Breuer* held that statutory permission to litigate a federal claim in state court does not foreclose removal under the federal-question jurisdiction.
>
> The Fair Labor Standards Act provides that a plaintiff may "maintain" an action in either state or federal court, and Breuer insisted that a right to "maintain" an action in state court forecloses its removal. The Justices concluded, however, that a plaintiff's right to litigate in state court does not block a defendant from electing a federal forum, because 28 U.S.C. § 1441(a), the general removal provision, allows the defendant to remove any claim under federal law (or supported by diversity of citizenship) "[e]xcept as otherwise expressly provided by Act of Congress". The word "maintain" in the FLSA is not an "express" prohibition on removal, *Breuer* held.
>
> **One may say exactly the same about the right to sue in state court under § 227(b)(3).** It does not mention removal or the general federal-question jurisdiction. It does not declare state jurisdiction to be exclusive.

*Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 450-51 (7th Cir. 2005) (emphasis added).

The *Brill* Court noted that the TCPA's express reference only to state courts is not superfluous:

> Other circuits, writing before *Breuer,* wondered what function § 227(b)(3) serves if it does not make state jurisdiction exclusive. Had Congress never penned those words, plaintiffs could have used state forums to the extent they were generally open to civil litigation. See *Testa v. Katt,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947). That's true enough, but restating an established norm can be beneficial, if only because it avoids any argument that for this law *federal* jurisdiction is exclusive. Such contentions are frequent and may entail decades of litigation across the thirteen circuits. See, e.g., *Yellow Freight System, Inc. v. Donnelly,* 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990) (holding, after 26 years of litigation, that claims under the Civil Rights Act of 1964 may be resolved in state as well as federal courts); *Tafflin v. Levitt,* 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990) (holding, after 20 years of

> litigation, that claims under RICO may be resolved in state as well as
> federal courts). Section 227(b)(3) may serve the further function of freeing
> states from *Testa*'s rule that they may not discriminate against federal
> claims; the clause in § 227(b)(3) that the action is proper "if otherwise
> permitted by the laws or rules of court of a State" implies that each state
> may decide for itself whether to entertain claims under the Telephone
> Consumer Protection Act.

*Id.* at 451.

Relying on the noted differences within the language of the TCPA itself, the *Brill* Court

reinforced its reasoning that section 227(b)(3) does not provide for exclusive jurisdiction in the

state courts:

> Section 227(b)(3) does not say that state jurisdiction is "exclusive"-but
> another part of § 227 does use that word. Section 227(f)(1) permits the
> states themselves to bring actions based on a pattern or practice of
> violations. Section 227(f)(2) continues: "The district courts of the United
> States, the United States courts of any territory, and the District Court of
> the United States for the District of Columbia shall have exclusive
> jurisdiction over all civil actions brought under this subsection." How
> strange it would be to make federal courts the exclusive forum for suits by
> the states, while making state courts the exclusive forum for suits by
> private plaintiffs. **But then § 227(f)(2) is explicit about exclusivity, while
> § 227(b)(3) is not; the natural inference is that the state forum
> mentioned in § 227(b)(3) is optional rather than mandatory.** Likewise
> the proviso that actions may be filed in state court "if otherwise permitted
> by the laws or rules of court of a State" implies that federal jurisdiction
> under § 1331 or § 1332 is available; otherwise where would victims go if a
> state elected not to entertain these suits? Our point is not that the reference
> to exclusive jurisdiction in § 227(f)(2) shows that "Congress knows how"
> to limit litigation to one set of courts-references to the subjective
> knowledge of a body with two chambers and 535 members, and thus
> without a mind, rarely facilitate interpretation-but that differences in
> language within a single enactment imply differences in meaning as an
> objective matter. See Akhil Reed Amar, *Intratextualism,* 112 Harv. L.Rev.
> 747 (1999). **The contrast between § 227(f)(2) and § 227(b)(3) is baffling
> unless one provides exclusivity and the other doesn't.**

*Id.* (emphasis added).

C.     **Then-Judge Alito, Through His Dissent In *Erienet, Inc. v. Velocity Net, Inc.*, Opined That The Third Circuit Majority Had Erred In Holding That The TCPA Divests Federal District Courts Of Federal-Question Jurisdiction.**

In *ErieNet, Inc. v. Velocity Net, Inc.*, then-Judge Alito wrote through his dissenting opinion that the majority had erred in holding that federal district courts do not have jurisdiction to entertain private actions under the TCPA:

> It is undisputed that the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute, creates a private right of action on behalf of a person or entity victimized by telemarketing abuse. Such an action is plainly one "arising under the . . . laws . . . of the United States" within the meaning of 28 U.S.C. § 1331, the general federal question jurisdiction statute. The majority, however, holds that the district courts do not have jurisdiction to entertain private TCPA actions under section 1331 because 47 U.S.C § 227(b)(3) in effect divests the federal courts of jurisdiction. But section 227(b)(3) says nothing about the jurisdiction of the federal district courts; instead, it says merely that an action under that provision "may" be brought in an appropriate state court "if otherwise permitted by the laws or rules of court of" that state. More than this, it seems to me, is needed to divest a federal district court of its jurisdiction under section 1331. Indeed, I think that the Supreme Court's decision in *Tafflin v. Levitt*, 493 U.S. 455, 110 S. Ct. 792, 107 L .Ed. 2d 887 (1990), clearly shows that the majority has erred.

*ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 521 (3d Cir. 1998) (Alito, J., dissenting).

Then-Judge Alito additionally noted that "the TCPA's explicit mention of state courts is not meaningful enough to vest them with exclusive jurisdiction," that "the TCPA's permissive grant of jurisdiction to state courts does not constitute an 'explicit statutory directive' sufficient to divest district courts of their section 1331 federal question jurisdiction," and that "it is clear that the language of the TCPA is insufficient to divest district courts of their federal question jurisdiction, as the statute merely provides that private suits 'may' be brought in state court." *Id.* at 522.

## XVI.   THIS COURT HAS SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S CLAIM UNDER THE TCPA.

"[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."  28 U.S.C. § 1367(a)

### A.   This Court May Decide Plaintiff's Claims Under The TCPA Where An Independent Basis For Federal Subject Matter Jurisdiction Exists.

Even should this Court hold that the TCPA does not confer upon it federal-question jurisdiction, the TCPA does not prevent federal district courts from hearing claims under the TCPA where an independent basis for federal subject matter jurisdiction exists.  *U.S. Fax Law Ctr., Inc. v. iHire, Inc.*, 476 F. 3d 1112, 1118 (10th Cir. 2007) (holding that the TCPA did not preclude federal courts from hearing TCPA claims when diversity jurisdiction exists); *Gottlieb v. Carnival Corp.*, 436 F. 3d 335, 343 (2d Cir. 2006); *Brill*, 427 F.3d at 450.

In the instant matter, this Court has independent jurisdiction over Plaintiff's claims under the FDCPA.  15 U.S.C. § 1692k(d); 28 U.S.C. § 1331.  Plaintiff's claims under the FDCPA and TCPA are based on the same set of operative facts; specifically, telephone calls placed by Defendant to Plaintiff.  This Court, therefore, has supplemental jurisdiction over Plaintiff's claims under the TCPA where Plaintiff's claims under the FDCPA arise out of the same conduct.

In a substantially similar matter, the Western District of Tennessee analyzed the issue at length and held that federal courts may properly exercise supplemental jurisdiction over TCPA claims.  *Brown v. Hosto & Buchan, PLLC*, 748 F. Supp. 2d 847, 854-59 (W.D. Tenn. 2010).

### B.   Should This Court Refuse Supplemental Jurisdiction Over Plaintiff's Claims Under The TCPA, An Anomalous Result Would Arise.

"Holding that the TCPA vests exclusive and total jurisdiction in state courts would 'create the anomalous result that state law claims based on unlawful telephone calls could be

brought in federal court, while federal TCPA claims based on those same calls could be heard only in state court.' "  *U.S. Fax Law Ctr., Inc. v. iHire, Inc.*, 476 F. 3d 1112, 1117 (10th Cir. 2007) (quoting *Kinder v. Citibank*, 2000 WL 1409762, at *4 (S.D. Cal. Sept. 14, 2000) (noting that this undermines the objective of supplemental jurisdiction)).

## XVII. THE TCPA PROHIBITS THE PLACEMENT OF PHONE CALLS USING AN AUTOMATIC DIALER, REGARDLESS OF WHETHER THE CALLS ARE RECEIVED.

The TCPA provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) **to make** any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> *        *        *
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

"Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Engine Mfrs. v. South Coast Air Quality Management Dist.*, 541 U.S. 246, 252 (2004) (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985)).  Thus, the TCPA prohibits the mere making of calls, and under the plain language of the statute, it is irrelevant whether anyone in fact received the calls.

The TCPA states it "shall be unlawful for any person . . . **to make any call** . . . using any automatic telephone dialing system. . . ." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).  "It is

the act of making a call, that is, of attempting to communicate to a cellular telephone number using certain equipment, that the TCPA prohibits.  Whether the call had the potential for a two-way real time voice communication is irrelevant." *Joffe v. Acacia Mortg. Corp.*, 121 P.3d 831 (Ariz. App. Div. 1 2005), review denied, (May 23, 2006), and cert. denied, 127 S. Ct. 934 (2007).  "As other courts have recognized, however, limiting the definition of the word 'call' to oral communications by phone does not comport with the remainder of § 227.  Rather than prohibiting calls to a telephone, § 227(b)(1)(A)(iii) prohibits a person from making a 'call' 'to any telephone *number* assigned to a paging service, cellular telephone service specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.' " *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1004-1005 (N.D. Ill. 2010) (emphasis in original).

The Southern District of Florida has also held that a TCPA plaintiff need not receive the calls, explaining:

> The plain language of the Act prohibits *"mak[ing] any call* ... using any automatic telephone dialing system ... [to] any telephone number assigned to a ... cellular telephone service." *See* § 227(b)(1)(A) (emphasis added). MRS is essentially arguing that the statute's prohibition language not only requires that a call be "made" or placed using an automatic telephone dialing system, but that the owner of the cellular telephone number be "aware" of the calls. The text of the TCPA, however, does not include such a requirement. MRS has not cited any cases holding that the recipient of a call must answer the phone or somehow be aware of the call in order for there to be a violation of the TCPA. Further, it has not identified any Federal Communications Commission ("FCC") regulations or decisions issued pursuant to the TCPA that would interpret the TCPA's prohibition to include such a requirement. . . . Accordingly, I decline to infer that requirement here, and rely on the plain language of the Act.

*Fillichio v. M.R.S. Associates, Inc.*, 09-61629-CIV, 2010 WL 4261442, at *3 (S.D. Fla. Oct. 19, 2010) (emphasis and brackets in original).

43

### A.   *The Chair King*, Upon Which Defendant Primarily Relies, Is Not Persuasive.

Defendant relies upon the opinion of the Texas Supreme Court in *The Chair King, Inc. v. GTE Mobilnet of Houston, Inc.*, 184 S.W.3d 707, 717 (Tex. 2006) to argue that the TCPA must yield to the provisions of Tex. Bus. & Com. Code § 305.053, and that only calls actually received are actionable.  However, *The Chair King* did not address this issue.  As well, because the TCPA is a federal statute, federal courts "are not bound by decisions of the state courts . . . interpreting the federal TCPA."  *Charvat v. NMP, LLC*, --- F.3d ----, 2011 WL 3805618, at *7, n. 9 (6th Cir. Aug. 30, 2011) (citing *Charvat v. GVN Michigan, Inc.*, 561 F.3d 623, 630, n. 6 (6th Cir. 2009)).  Discussed *infra*, this Court should follow the persuasive opinion of the Texas Court of Appeals, which distinguished *The Chair King*.

### B.   State Law Must Yield To Federal Law When The Two Conflict.

If a state law purports to restrict the application of federal law, it is preempted.  *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 395 (1971) ("For just as state law may not authorize federal agents to violate the Fourth Amendment, [citation] neither may state law undertake to limit the extent to which federal authority can be exercised."); *Little Co. of Mary Hosp. and Health Care Centers v. Shalala*, 165 F.3d 1162, 1164 (7th Cir. 1999) ("But of course state law cannot preempt federal law."); *Bradshaw v. Township of Middletown*, 296 F. Supp. 2d 526, 550 (D.N.J. 2003) ("State law cannot preempt federal law; if the two conflict, it is the state law, not the federal, that is preempted. U.S. const. art. VI, cl. 2."); *see also Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1230 (D. Colo. 2010) ("the Court cannot accept that a state statute of frauds bars a federal cause of action filed in federal court.").  In other words, "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary

to federal law, must yield." *Gade v. Nat. Solid Wastes Management Ass'n*, 505 U.S. 88, 108 (1992).

Therefore, even if Defendant's interpretation of § 305.053 were correct in that only calls received are actionable, the law would directly conflict with the TCPA, which prohibits any calls made.

### C.     Defendant's Interpretation Would Lead To An Absurd Result.

Defendant argues that the TCPA does not bind the states and that states are free to make laws that are either more or less restrictive of the protections afforded by the TCPA, wholly at their own discretion.   As Defendant puts it: "the TCPA is a federal statute which States can choose whether to enforce, and if they do so, they may establish more or less restrictive provisions."  (Doc. 20, ¶21).  To hold that the federal law provides neither a floor nor a ceiling would render the TCPA a nullity, especially if, as Defendant also argues, federal courts do not have jurisdiction over TCPA claims.  As the Seventh Circuit cautiously warned, "where would victims go if a state elected not to entertain these suits?"  *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 451 (7th Cir. 2005).  To accept the Defendant's interpretation is to turn a federal statute into a mere advisory opinion.  Such was not the intent of Congress in enacting the TCPA.

### D.     A Texas Court of Appeals Recently Distinguished *Chair King* To Find That A TCPA Claim Must Be Analyzed In Accordance With The Plain Language Used By Congress.

A Texas Court of Appeals was recently faced with the very same argument now before this Court, in which counsel for the defendant in that case was counsel for the Defendant in the instant litigation.  *First Nat. Collection Bureau, Inc. v. Walker*, --- S.W.3d ----, 2011 WL 2716778 (Tex. App. – Dallas July 14, 2011).  The Court explained that the TCPA, specifically 47 U.S.C. § 227(f)(1), "makes it clear that a state that 'opts in' is not free 'to expand or restrict

the statute's requirements' as the state wishes. [(quoting defendant's language)].   Subsection

([f])(1) specifies what is *not* preempted by federal law, namely 'more restrictive intrastate

requirements or regulations.' "   *Id.* at *8 (emphasis in original).

Defendant cites *Walker* in its motion, but argues that the decision ignores *The Chair*

*King*'s precedent.   As stated earlier, *The Chair King* does not bind this Court.   But in addition,

the *Walker* court did discuss the reasoning of *The Chair King*, and distinguished it.   "The

question of whether states must 'take all-or-none' of the TCPA was simply not addressed in

*Chair King.*"   *Id.* at *7.   The *Walker* court went on to further distinguish the other cases cited by

Defendant in its instant motion, finding the defendant's arguments unpersuasive.   *Id.* at *7-9.

### E.   Even If Only Called Received Are Actionable, Plaintiff Received All Calls Placed By Defendant In This Case.

In this case, Defendant placed no less than six telephone calls to Plaintiff's cellular

telephone, all of which were received.   (SOF, ¶¶2-4).   Therefore, Defendant's argument, while

incorrect, is also immaterial.

## XVIII. BY MAKING CALLS TO PLAINTIFF'S CELLULAR TELEPHONE NUMBER USING AN AUTOMATIC TELEPHONE DIALING SYSTEM, DEFENDANT VIOLATED THE TCPA, AND IS THEREFORE NOT ENTITLED TO SUMMARY JUDGMENT ON THIS CLAIM.

### A.   Defendant Used An "Automatic Telephone Dialing System."

The TCPA prohibits a caller from using any automatic telephone dialing system to call a

telephone number associated with a cellular service.   The TCPA defines an "automatic telephone

dialing system" as "equipment which **has the capacity** (A) to store or produce telephone

numbers to be called, using a random or sequential number generator; and (B) to dial such

numbers."   47 U.S.C. § 227(a)(1) (emphasis added).   "[A] system need not actually store,

produce or call randomly or sequentially generated telephone numbers, it only need to have the capacity to do it." *Satterfield v. Simon & Schuster, Inc.*, 569 F. 3d 946, 951 (9th Cir. 2009).

The FCC has issued rulings expanding the definition of "automatic telephone dialing system" to include "predictive dialers", which the FCC defined as "having the capacity to dial numbers without human intervention" and as " 'equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls .... [i]n most cases, telemarketers program the numbers to be called into the equipment ...' " FCC, In the Matter Of Rules and Regulations Implementing the Telephone Consumer Protection Act Of 1991: Request of ACA International for Clarification and Declaratory Ruling, 07-232, ¶12, n. 23 (2007). The FCC also stated that the "purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented" and that to exclude equipment because "it relies on a given set of numbers would lead to an unintended result." FCC, In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 03-153, ¶133.

The Northern District of Illinois recently discussed the process and reasoning of the FCC's rulings at length:

> More recently, companies . . . have developed dialers that call lists of known telephone numbers—in this case, the telephone numbers of CPS's [the debt collector's] customers. (*Id.* at ¶ 16.)
>
> In 2002, the FCC solicited comments concerning the TCPA's definition of an "automatic telephone dialing system." *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 17 FCC Rcd 17459, 17473–476 (September 18, 2002). The FCC acknowledged that autodialing technology had advanced. *See id.* at 17474 ("More sophisticated dialing systems, such as predictive dialers and other electronic hardware and software containing databases of telephone numbers, are now widely used by telemarketers to increase productivity

and lower costs."). In light of that fact, it sought comments concerning "whether Congress intended the definition of 'automatic telephone dialing system' to be broad enough to include any equipment that dials numbers automatically, either by producing 10–digit telephone numbers arbitrarily or generating them from a database of existing telephone numbers." *Id.* "Specifically, we ask whether a predictive dialer that dials telephone numbers using a computer database of numbers falls under the TCPA's restrictions on the use of autodialers." *Id.* at 17475. As CPS points out, **several companies argued that predictive dialers fell outside the TCPA's scope because a list or database of actual customer telephone numbers is, by definition, not randomly or sequentially generated**. *See, e.g.,* Comments of the American Teleservices Ass'n, attached as Ex. C to Stone Decl., at 113 ("Predictive dialers do not generate 'random' or 'sequential' telephone numbers. **Instead, they rely on telephone numbers from lists provided by the equipment operator.** These lists are anything but 'random' or 'sequential.' "). The thrust of these comments was that Congress, in enacting the TCPA, intended to regulate an especially vexatious type of autodialing, not autodialing generally. (*See, e.g.,* Comments of Mastercard Int'l Inc., attached as Ex. B to Stone Decl., at 6 ("[P]redictive dialers are generally used to dial numbers the telemarketer *intends* to call, not those randomly generated which may include hospital rooms, etc.") (emphasis in original).)

**The FCC effectively rejected these comments, concluding that "a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress."** *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd 14014, 14093 (July 3, 2003). The technology had changed, but the basic function of such equipment—"the *capacity* to dial numbers without human intervention"—had not. *Id.* at 14092 (emphasis in original). The FCC went on to conclude that,

> [T]o exclude from [the restrictions on automated and prerecorded calls] equipment that use [sic] predictive dialing software from the definition of "automated telephone dialing equipment" simply because it relies on a given set of numbers would lead to an unintended result. Calls to emergency numbers, health care facilities, and wireless numbers would be permissible when the dialing equipment is paired with predictive dialing software and a database of numbers, but prohibited when the equipment operates independently of such lists and software packages. We believe the purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented.

> *Id.* at 14092–93. In 2008, in response to a request for clarification, **the FCC "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."** *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 23 FCC Rcd 559, 566 (Jan. 4, 2008). The petitioner requesting clarification argued that "a predictive dialer meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists." *Id.* The FCC rejected this interpretation, citing the policy considerations that guided its 2003 ruling. *Id.* at 566–67.

*Griffith v. Consumer Portfolio Serv., Inc.*, 10 C 2697, 2011 WL 3609012, at *2-3 (N.D. Ill. Aug. 16, 2011) (emphasis added).

Defendant, aware of the FCC's rulings, argues that the Court should disregard them. However, not only should the Court follow the FCC's rulings for the above-cited policy reasons, the Court is bound by the FCC's rulings under the Hobbs Act.  See 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a); *see also CE Design Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446-50 (7th Cir. 2010).

This is consistent with the recent rulings of several other district courts across the country, which have followed the FCC's rulings and held that predictive dialers are covered by the TCPA. *See Tovar v. Midland Credit Mgmt.*, 10CV2600 MMA MDD, 2011 WL 1431988, at *3 (S.D. Cal. Apr. 13, 2011) ("The FCC ruled predictive dialers used by debt collectors fall within the meaning of autodialers, thereby refusing to carve out an exception for debt collectors."); *Robinson v. Midland Funding, LLC*, 10CV2261 MMA AJB, 2011 WL 1434919, at *5 (S.D. Cal. Apr. 13, 2011) (same); *Vance v. Bureau of Collection Recovery LLC*, 10-CV-06324, 2011 WL 881550, at *2 (N.D. Ill. Mar. 11, 2011) ("the FCC has indicated, and other courts have held, that predictive dialing systems do meet the definition of devices prohibited by the TCPA."); *Hicks v. Client Services, Inc.*, 07-61822-CIV-DIMITRO, 2009 WL 2365637, at *5

(S.D. Fla. June 9, 2009) ("This type of device, which calls a set of numbers without human intervention, falls under the FCC definition of automatic telephone dialing systems.").

In this case, Defendant placed Plaintiff's cellular telephone number in its computer database, and the number was automatically dialed by computer software, without human intervention.  (SOF, ¶¶2, 7-8).  Defendant does not argue that its dialing system works any differently.   In fact, Defendant's employee admitted in a conversation with Plaintiff that Defendant uses an automatic dialer to call Plaintiff.  (SOF, ¶8).  Thus, Defendant used a predictive dialer, which falls under the definition of an "automatic telephone dialing system."

**B.     If A Call Is Placed To A Party's Cellular Telephone, The TCPA Applies, Regardless Of Whether The Party Is Charged For The Particular Call.**

The TCPA prohibits using an auto dialer to make a call "to any telephone number assigned to a paging service, **cellular telephone service**, specialized mobile radio service, or other radio common carrier service, **or** any service for which the called party is charged for the call."  47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).  Because the phrase "for which the called party is charged for the call" only modifies "any service," calls placed to a number assigned to a cellular telephone service, or the other services specifically mentioned in the statute, do not require the party to be charged in order to violate the TCPA.  *See Mitchem v. Illinois Collection Serv., Inc.*, 09 C 7274, 2010 WL 3003990, at *2 (N.D. Ill. July 29, 2010) ("The TCPA does not require plaintiff to allege that he was charged for individual collection calls to state a claim."); *Abbas v. Selling Source, LLC*, 09 CV 3413, 2009 WL 4884471, at *3 (N.D. Ill. Dec. 14, 2009) ("the TCPA does not require that a party called via a number assigned to a cellular telephone

service must be charged for the call to make that call actionable.").[4]   One court recently

explained why this is, with reference to the last antecedent rule of statutory construction:

> [R]eading the FCC's statement to require that a party be charged for a call
> in order for a violation of § 227 to occur is contrary to the plain language
> of the statute. Due to the occurrence of two disjunctive prepositions in the
> relevant portion of § 227, the phrase "for which the called party is charged
> for the call" only modifies "any service." *See O'Kane v. Apfel,* 224 F.3d
> 686, 690 (7th Cir. 2000) (identifying the "last antecedent rule of statutory
> construction which holds" "that where one phrase of a statute modifies
> another, the modifying phrase applies only to the phrase immediately
> preceding it") (internal citations omitted); *see also Shelby County State
> Bank v. Van Diest Supply Co.,* 303 F.3d 832, 836 (7th Cir. 2002) (applying
> the last antecedent rule of statutory construction and holding that a
> modifying phrase contained in a statute applies only to the phrase
> immediately preceding it).

*Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1009-10 (N.D. Ill. 2010).

As the Northern District of Illinois has explained, Defendant's reliance on the FCC's

1992 order is misplaced:

> Selling Source claims that a 1992 FCC Report and Order suggests that the
> TCPA requires a called party to be charged for a violation to occur. . . .
> Not two weeks later, however, Congress amended the TCPA to provide
> that the FCC "may, by rule or order, exempt from the requirements of
> paragraph (1)(A)(iii) of this subsection calls to a telephone number
> assigned to a cellular telephone service that are not charged to the called
> party." *See* Pub.L. No. 102-556, 106 Stat. 4181, 4194-95 (Oct. 28, 1992),
> enacted as 47 U.S.C. § 227(b)(2)(C). If uncharged calls were already
> exempted from the requirements of the TCPA, as the FCC's 1992 Order
> and Selling Source maintain, the later congressional amendment would be
> wholly superfluous, as no FCC "rule or order" would be necessary to
> exempt such calls from the statute's purview. Courts avoid such ineffective
> statutory construction. *See In the Matter of Merchants Grain, Inc.,* 93 F.3d
> 1347, 1353-54 (7th Cir. 1996).

---

[4] Such a finding comports with Texas appellate authority in this area.  *See e.g. Omnibus Intern., Inc. v. AT
& T, In*c., 111 S.W.3d 818, 825 (Tex. App. — Dallas 2003, pet. granted) ("To limit the statute's
prohibition to those instances where a third party bills the recipient for specific costs associated with the
facsimile is too restrictive to achieve the statute's purpose.").

*Abbas v. Selling Source, LLC*, 09 CV 3413, 2009 WL 4884471, at *3 (N.D. Ill. Dec. 14, 2009) (cited favorably and quoted at length by *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1010 (N.D. Ill. 2010)).

Notwithstanding that Defendant ignores congressional intent in its argument that its dialing system should not be covered by the TCPA, Defendant's argument that Congress was concerned primarily with cost-shifting is similarly unavailing:

> Finally, while Selling Source argues that congressional intent indicates that Congress was primarily concerned with cost-shifting (and that consequently the TCPA should not apply to calls not charged to the called party), Congress was just as concerned with consumers' privacy rights and the nuisances of telemarketing. *See Bonime v. Avayu,* 547 F.3d 497, 499 (2d Cir. 2008) ("Congress's stated purpose in enacting the TCPA was to protect the privacy interests of residential telephone subscribers ...."); *see also* Section II.E.1 *infra.* Automated calls invade privacy and pose nuisances regardless of whether the called party is charged for the call, and so congressional intent is furthered by the TCPA's application to both charged and uncharged calls.

*Abbas*, 2009 WL 4884471, at *3.

Because Defendant's calls to Plaintiff in this case were placed to Plaintiff's cellular telephone, they violate the TCPA.

### C.    Defendant Did Not Have Plaintiff's Prior Express Consent To Call Plaintiff's Cell Phone Using An Auto Dialer.

#### 1.    Defendant Has The Burden Of Proof To Show Prior Express Consent.

The FCC has ruled that the defendant in a TCPA action has the burden of proving prior express consent existed:

> To ensure that creditors and debt collectors call only those consumers who have consented to receive autodialed and prerecorded message calls, we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent. The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications. Should a question arise as to whether express consent was provided, the

> burden will be on the creditor to show it obtained the necessary prior
> express consent. Similarly, a creditor on whose behalf an autodialed or
> prerecorded message call is made to a wireless number bears the
> responsibility for any violation of the Commission's rules. Calls placed by
> a third party collector on behalf of that creditor are treated as if the
> creditor itself placed the call.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling,* FCC 07-232, 23 F.C.C.R. 559, 564 (2007).

As a result, district courts across the country have held that "[t]he defendant bears the burden of proof with respect to 'prior express consent.' *U.S. v. First City Nat. Bank of Houston,* 386 U.S. 361, 366, 87 S.Ct. 1088, 18 L.Ed.2d 151 (1967) (where one claims the benefit of an exception to the prohibition of a statute, that party carries the burden of proof)." *Sengenberger v. Credit Control Services, Inc.*, 09C2796, 2010 WL 1791270, at *3 (N.D. Ill. May 5, 2010) *adhered to on reconsideration,* 2010 WL 6373008 (N.D. Ill. June 17, 2010); *see, e.g., Tovar v. Midland Credit Mgmt.*, 10CV2600 MMA MDD, 2011 WL 1431988, at *3 (S.D. Cal. Apr. 13, 2011) ("With regard to prior consent, the FCC ruled that it is the creditor's burden to show the wireless number was provided by the consumer to the creditor during the transaction that resulted in the debt owed."); *Robinson v. Midland Funding, LLC*, 10CV2261 MMA AJB, 2011 WL 1434919, at *5 (S.D. Cal. Apr. 13, 2011) (same); *Edwards v. Nat'l Credit Adjusters, LLC*, 51531, 2010 WL 3838693, at *1 (Nev. Sept. 28, 2010) ("Under 47 U.S.C. § 227 . . . a creditor or debt collector has the  burden of showing that it had the consumer's prior express consent to place autodialed or pre-recorded calls to the consumer's wireless telephone."); *Pollock v. Bay Area Credit Serv., LLC*, 08-61101-CIV, 2009 WL 2475167 (S.D. Fla. Aug. 13, 2009) ("The burden of establishing prior express consent is on the Defendant.").

### 2.     Defendant Has Not And Cannot Meet Its Burden In This Case.

"Express consent is '[c]onsent that is clearly and unmistakably stated.' " *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) (citing Black's Law Dictionary 323 (8th ed. 2004)).  In this case, Defendant cannot show that Plaintiff provided prior express consent to be called on his cell phone using an automatic telephone dialing system.  As the FCC recognized, Defendant is "in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications."  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling,* FCC 07-232, 23 F.C.C.R. 559, 564 (2007).  Defendant has produced no such records, nor has it provided any other evidence that Plaintiff provided his cell phone number to Comcast. (SOF, ¶10).  Nor has Defendant provided any evidence that such number was provided "during the transaction that resulted in the debt owed."  *Id.* ("We emphasize that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, **and that such number was provided during the transaction that resulted in the debt owed**.") (emphasis added).  Because Defendant provides no evidence as to how, when, or if Plaintiff provided Comcast with his cell phone number, it cannot meet its burden of showing prior express consent.

### D.     Because Defendant Acted Willfully, It Is Not Entitled To Summary Judgment On The Issue Of Treble Damages Under The TCPA.

Treble damages are proper under the TCPA – three (3) times the statutory minimum[5] damage award of $500.00 **per violation** – where the defendant's actions were committed "willfully or knowingly."   47 U.S.C. § 227(b)(3).   Although neither the TCPA nor FCC

---

[5]  The TCPA allows a plaintiff "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater."  47 U.S.C. § 227(b)(3)(B).  Plaintiff seeks an award of statutory damages, and not actual damages pursuant to this section.

regulations define the terms "willfully or knowingly," courts have generally interpreted willfulness to imply only that an action itself was intentional. *Smith v. Wade,* 461 U.S. 30, 41 n. 8 (1983). The Communications Act of 1943, of which the TCPA is a part, defines willful as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[ ], rule or regulation." *Sengenberger v. Credit Control Services, Inc*., 2010 WL 1791270, *6 (N.D. Ill. 2010); *see also Dubsky v. Advanced Cellular Communications, Inc.,* 2004 WL 503757, at *2 (Ohio Com. Pl. 2004) (in the context of the TCPA, the term acting "willfully" means that "the defendant acted voluntarily, and under its own free will, regardless of whether the defendant knew that it was acting in violation of the statute").

Similarly, the United States Supreme Court has explained that " 'knowingly' does not necessarily have any reference to a culpable state of mind or to knowledge of the law. As Justice Jackson correctly observed, 'the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law.' . . . . Thus, unless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense." *Bryan v. United States*, 524 U.S. 184, 192 (1998); *see also United States v. Meade*, 175 F.3d 215, 226, n. 5 (1st Cir. 1999) ("knowing," as used in a criminal statute, "normally signifies that the government needs to prove only that the defendant knew of the facts comprising the offense, and nothing more"); *United States v. Cohen*, 260 F.3d 68, 76 (2d Cir. 2001) (holding it matters only that defendant knowingly committed the deeds forbidden by statute, not that he intended to violate the statute).

Therefore, "to establish a *knowing* violation of the TCPA for an award of treble damages, a plaintiff must prove only that the defendant knew that it acted or failed to act in a manner that violated the statute, not that the defendant knew that the conduct itself constituted a violation of

the law." *Stewart v. Regent Asset Mgmt. Solutions*, 1:10-CV-2552-CC-JFK, 2011 WL 1766018, at *7 (N.D. Ga. May 4, 2011) (quoting *Charvat v. Ryan*, 879 N.E.2d 765, 770 (Ohio 2007)).

Therefore, Defendant's argument that it did not know its conduct violated the law is unavailing. In this case, Defendant knew it was using an auto dialer to call Plaintiff. (SOF, ¶¶7-8). This is all the statute requires to support an award of treble damages.

**XIX.  CONCLUSION.**

WHEREFORE, Plaintiff respectfully requests this Court to deny Defendant's motion for summary judgment in its entirety.

Dated:  September 6, 2011.                    Respectfully submitted,

                                             WEISBERG & MEYERS, LLC

                                    By: s/Noah D. Radbil
                                        Noah D. Radbil
                                        Texas Bar No. 24071015
                                        noah.radbil@attorneysforconsumers.com
                                        Dennis R. Kurz
                                        Texas Bar No. 24068183
                                        dkurz@attorneysforconsumer.com
                                        WEISBERG & MEYERS, LLC
                                        Two Allen Center
                                        1200 Smith Street, Sixteenth Floor
                                        Houston, Texas 77002
                                        Telephone:    (888) 595-9111
                                        Facsimile:    (866) 317-2674

                                        *Attorneys for Plaintiff* DEREK LEE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 6, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Robbie Malone
Robbie Malone, PLLC
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231

<u>s/Noah D. Radbil</u>
Noah D. Radbil