IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHER DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| DEREK LEE | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. G-10-538 |
| | § | |
| CREDIT MANAGEMENT, LP | § | |

## REPORT AND RECOMMENDATION

Before the Court, by referral from the Honorable Kenneth M. Hoyt, United States District Court Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), is Defendant Credit Management, LP's Motion for Summary Judgment. (Docket Entry ("Dkt.") No. 20). Plaintiff Derek Lee filed a Response in Opposition to Defendant's Motion (Dkt. No. 25), to which Defendant filed a Reply. (Dkt. No. 31). Also before the Court is Plaintiff Derek Lee's Motion for Partial Summary Judgment (Dkt. No. 27), to which Defendant filed a Response (Dkt. No. 35), and Plaintiff filed a Reply. (Dkt. No. 36). Having carefully considered the competing motions, the responses and replies, the exhibits, and the applicable law, the Court submits this Report and Recommendation to the District Court.

## I. INTRODUCTION

On November 18, 2010, Plaintiff Derek Lee ("Lee") brought the instant suit against Defendant Credit Management, LP d/b/a The CMI Group ("CMI")[1] alleging that in its attempt

---

[1] Defendant points out that it was erroneously named as "Credit Management, LP dba The CMI Group", but that it is "Credit Management, LP" ("CM"). (Dkt. No. 39 at cover). However, insofar as

1

to collect a debt, CMI violated the Fair Debt Collection Practices Act, the Texas Debt Collection Practice Act, the Deceptive Trade Practices Act of the Texas Business and Commerce Code, and the Telephone Consumer Protection Act. Lee seeks to recover monetary damages for the violations and an order or injunction preventing CMI from continuing the violations. Almost a year later, CMI filed its Motion for Summary Judgment seeking dismissal of Lee's action in its entirety. Shortly thereafter, Lee filed a Motion for Partial Summary Judgment.

## II. FACTUAL BACKGROUND

The facts in this case are not complex. Lee, a customer of Comcast Cable, discontinued the services that Comcast provided to his home. At the time he discontinued services, Lee claims that he was led to believe that Comcast would pick-up its equipment, but this did not occur. Since Comcast did not receive its equipment back from Lee when services were discontinued, it automatically charged his account approximately $300-400 for the cost of the equipment. After receiving the bill for these charges Lee contacted Comcast and informed them of the misunderstanding regarding the return of the equipment. Following this call, the equipment was returned to Comcast, his account was credited, and Lee believed that his account was satisfied. However, thereafter, Lee was surprised to receive an email from Comcast informing him that he still owed them $32.00 for unreturned equipment–namely, a modem. (Dkt. No. 25, Ex.B).

On July 10, 2010, Comcast referred the outstanding balance on Lee's account to CMI for collection. (Dkt. No. 35, Def.App. 0089 (Wilson Affidavit); Dkt. No. 26, Ex. 4). Lee's phone records reflect that on July 13, 2010, CMI attempted to contact him about the amount owed. (Dkt.

"CMI" has been used and/or referred to throughout the pleadings and other documents, this Court will, for purposes of this Report and Recommendation and only to avoid further confusion, consider the two to be synonymous.

No. 25, Ex. C). The next day a CMI representative attempted contact again and this time reached Lee by telephone— his cellular phone—and informed him that the company was seeking to collect the outstanding balance that he owed Comcast. The representative for CMI stated that the amount he owed was $386.21. During this call, Lee informed the representative that he was at work offshore[2] and that he believed, based on an email that he had received from Comcast, that he only owed $32.00, not $386.21. (Dkt. No. 25, Ex. B; Dkt. No. 26, Ex. 1). The representative requested that Lee mail her the email, but because he worked offshore, Lee told her that he would be unable to do that.[3] Lee agreed to send the document to CMI when he returned home the following week and the representative promised to note his account accordingly. (Dkt. No. 26, Ex. 1).

However, less than a week later and before he returned home, another CMI representative called Lee again. Lee disputed that he owed Comcast $386.21 and, once again, explained that he was still working offshore and, therefore, he was unable to mail anything to CMI. Despite Lee's explanations, he was contacted again by telephone on July 20, 2010, at which time he reiterated his situation.

Thereafter, CMI's representatives continued to call Lee and reached him on July 30 and again on August 5, 2010. (Dkt. No. 25, Ex. C). Lee once again disputed that he owed Comcast

---

[2] According to his deposition testimony, Lee works offshore as a tankerman and he explained that he normally works fourteen or more days in a row and then he returns home for seven days. (Dkt. No. 20, Def.App. at 34 (Lee Deposition at 6:19-24; 23:17 - 24:16)).

[3] During one of the exchanges with Defendant's representatives, Lee offered to forward the email that he had received from Comcast electronically, but the representative declined to accept anything from him in this manner. Instead, the representative insisted that he send any information to CMI by mail or facsimile.

$386.21 and asked the representative to stop calling him. Before ending the call, Lee inquired if representatives from CMI were going to continue to harass him regarding this matter and he was told that they would continue to call until he paid the $386.21 that he owed Comcast.

Sometime after returning home, Lee returned the modem to Comcast and, dealing directly with Comcast, resolved his outstanding balance. (Dkt. No. 20 at Def. App. 0029 (Lee Deposition at 60:16-25). Thereafter, it appears that CMI may have placed another call to Lee on September 7, 2010. (*See* Dkt. No. 27, Ex. B (Dialer Master Result History)).

Lee then retained an attorney. (*See* Dkt. No. 48, Ex. C). On behalf of his client, the attorney sent CMI a letter dated September 28, 2010, disputing the debt and requesting that they cease all attempts to contact Lee. (Dkt. No. 48, Ex. C). On October 25, 2010, CMI sent Lee a letter through his attorney's office. In the letter, CMI informed Lee that he still owed Comcast $386.21; that it would continue to seek to recover this amount from him; that it had, as Lee suspected, reported this unpaid debt to the credit bureaus; and that it could not and/or would not honor his attorney's request to remove the information from the credit bureaus until the debt was paid in full. (Dkt. No. 26, Ex. 4).

Thereafter, Lee filed suit against CMI alleging that it violated both the Federal and Texas Fair Debt Collection Act, the Telephone Consumer Protection Act, and the Texas Deceptive Trade Practices Act. On August 5, 2011, CMI moved for summary judgment on all of Lee's claims (Dkt. No. 20), to which Lee responded (Dkt. No. 25) and CMI replied. (Dkt. No. 31). On September 9, 2011, Lee moved for partial summary judgment (Dkt. No. 27), to which CMI responded (Dkt. No. 35) and Lee replied. (Dkt. No. 36). The parties' cross motions for summary are now ripe for consideration.

4

## III. SUMMARY JUDGMENT STANDARD

The Court analyzes the cross motions of the parties under the well-established summary judgment standard. FED. R. CIV. P. 56(c); *see generally*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 576, 586-87 (1986); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999); *United States v. Arron*, 954 F.2d 249, 251 (5th Cir. 1992).

## IV. DISCUSSION

### A. Federal Fair Debt Collection Practices Act

In his Complaint, Lee alleges that CMI violated the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 (1982). In particular, Lee alleges that CMI violated 15 U.S.C. § 1692e and § 1692(g)(a) of the Act. (Dkt. No. 1). In addition, Lee maintains that Defendant violated § 1692d(2) and d(5) when it stated that it would continue to harass him. (*Id.*). The parties have filed cross-motions for summary judgment concerning Lee's claims under the FDCPA. (Dkt. Nos. 20, 27).

The FDCPA was enacted "to eliminate abusive debt collection practices ... and ... to protect consumers against debt collection practice abuses." 15 U.S.C. § 1692e. The protections of the Act extend only to those who are "consumers." *See id.* Under the Act, a "consumer" means "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3); *see also*, *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) (concluding that the plaintiff had standing to sue under the statute because a debt was erroneously attributed to him). The term "debt", however, is limited to obligations to pay money for transactions that are "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). Thus, assuming

an individual qualifies as a "consumer", the FDCPA prohibits "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692(d).

To establish a violation, a consumer need not prove intentional conduct by the debt collector. *See, e.g., Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010); *Johnson v. Riddle*, 443 F.3d 723, 728 (10th Cir. 2006); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir.1996). Instead, applying an objective standard, as measured by "the least sophisticated consumer", the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse. *See Taylor v. Perrin Landry, de Launay and Durand*, 103 F.3d 1232, 1236 (5th Cir., 1997); *see also, Ruth v. Triumph Partnerships*, 577 F.3d 790, 799 (7th Cir. 2009); *Harman v. Great Seneca Fin. Corp.*, 569 F.3d 600, 611-12 (6th Cir. 2009); *Reichert v. Nat'l Credit Systems, Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008); *United States v. Nat'l Fin. Services, Inc.*, 98 F.3d 131 (4th Cir. 1996); *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993); *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025 (6th Cir. 1992); *Graziano v. Harrison*, 950 F.2d 107, 111 (3d. Cir.1991); *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 778 (9th Cir. 1982). Where a violation is established, the Act prescribes damages that are available to the consumer. 15 U.S.C. §§ 1692k.

### 1. **Claim Under § 1692e(2)(A)**

Lee maintains that Defendant violated § 1692e(2)(A). Section 1692e, entitled "False or misleading representations," provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The statute

then delineates a list of non-exhaustive practices that are prohibited by debt collectors. 15 U.S.C. § 1692e. Among the prohibited practices is that a debt collector may not make false representations concerning "the character, amount or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Lee asserts that Defendant violated this provision by repeatedly and persistenly misrepresenting the amount of the debt he owed Comcast as being $386.21 (more than ten times what he understood he owed) and informing Lee that he needed to pay this amount or it would reported to the credit bureaus.[4]

Initially, the evidence before the Court reflects that Lee was a consumer because he owed Comcast a debt for the services they provided for personal, family or household purposes. (Dkt. No. 36, Ex. A). The evidence also reflects that, at one point, Lee did owe Comcast an amount, however, the exact amount of that debt remains unclear. For example, a July 8, 2010, invoice provided by Comcast reflects the amount owed as $332.18 (Dkt. No. 42, Def. App. 0001-0003; CMI 0302-0303 (McAvoy Affidavit)), whereas, on July 10, 2010, the date when Comcast referred the matter to CMI for collection, CMI reported the debt as $386.21. Finally, on the same date that Comcast referred the matter to CMI, Comcast informed Lee that he owed $32.00 (Dkt. No. 25, Ex. B). In the opinion of this Court, before any conclusion can be reached regarding whether Defendant actually misstated the amount of the debt, it is necessary that the actual amount of the debt be established.[5]

_____

[4] Based on its October 25, 2010 letter, Defendant did report the debt to the credit bureaus.

[5] The Court also notes that while Lee has explained that he satisfied his debt to Comcast directly, it is unclear when this occurred, what amount, if any, he paid, and when this occurred in relation to Defendant's demands for payment.

Defendant, however, appears to argue that, regardless of what the amount was or whether it was wrong, Lee cannot prevail on his claim because he has produced no evidence that it made a false representation intentionally. (Dkt. No. 20 at 36, ¶ 76). The case law does not support Defendant's view. Instead, several courts, including a Texas court, have concluded that even an unintentional misrepresentation of an amount of debt can violate § 1692e(2)(A). *See Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 995 (7th Cir. 1995); *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996) (same);*Goins v. JBC & Assocs., P.C.*, 352 F.Supp.2d 262 (D.Conn.2005); *Berndt v. Fairfield Resorts, Inc.*, 337 F.Supp.2d 1120 (W.D. Wis. 2004); *see also, Agueros v. Hudson & Keyse, LLC*, No. 04-09-00449-CV, 2010 WL 3418286 (Tex.App.– San Antonio, Aug. 31, 2010) (representing debt was $8,700 instead of approximately $4,000 owed constituted violation of FDCPA).

Even assuming that the dispute over the amount of the debt could be set aside, in the opinion of this Court, summary judgment would be inappropriate because a factual dispute also exists over whether Defendant's repeated and persistent representations regarding the amount of debt Lee owed (which was more than ten times what Lee believed he owed), combined with the fact that the amount of the debt was reported to the credit bureaus, would have been sufficient to mislead the least sophisticated consumer.

Notwithstanding, Defendant argues that, even to the extent any violations of the Act occurred, it is entitled to the protections of the *bona fide error* defense. (Dkt. No. 20 at 36-37). The statute does contain a "bona fide error" defense that insulates a debt collector from liability if it "shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding maintenance of procedures reasonably adapted to avoid any

8

such error." 15 U.S.C. § 1692k(c); *see, e.g.*, *Johnson v. Riddle*, 443 F.3d 723, 727 (10th Cir. 2006); *Kort v. Diversified Collection Services, Inc.*, 394 F.3d 530, 536 (7th Cir. 2005); *Jenkins v. Heintz*, 124 F.3d 824, 835 (7th Cir. 1997).

In the present case, Defendant, while not conceding a violation of the Act occurred, urges that, to the extent one occurred, it was unintentional and the result of a bona fide error. *See Nielsen v. Dickerson*, 307 F.3d 62, 641 (7th Cir. 2002) (debt collector "may avail itself of the bona fide error defense because it had no intent to violate the FDCPA, although its actions were deliberate"); *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) ("The debt collector must only show that the violation was unintentional, not that the communication itself was unintentional. To hold otherwise would effectively negate the bona fide error defense."); *Riddle*, 443 F.3d at 728 (joining the Sixth and Seventh Circuits in concluding that § 1692k(c) "requires proof that 'the violation' was not intentional, as opposed to proof that 'the conduct' [trying to collect the debt] was not intentional."). Even taking Defendant at its word, this does not end the inquiry. Defendant must establish that it had a reasonable procedure in place to prevent the kind of error that occurred.[6] Defendant has not made an adequate showing that it had reasonable procedures in place to prevent the kind of error that occurred in this case—particularly in light of its October 25, 2010 letter, which it sent *following* the letter that Lee's attorney sent it disputing the debt.

---

[6] Defendant's attempt to shift the burden back to Lee for failing to take advantage of the statutory debt validation procedures outlined in § 1692g (Dkt. No. 20 at 40, ¶ 85) appears to ignore, at least in part, the fact that Lee's attorney's did just that in his September 2010 letter. Assuming that Lee had already paid the outstanding balance to Comcast when his attorney sent that letter, it appears that it would be incumbent on Defendant to explain whether it verified the debt with Comcast prior to reporting it to the credit bureaus and claiming, once again, in its October 25, 2010, letter that Lee owed $386.21.

9

For all the reasons discussed, the Court **RECOMMENDS** that the cross motions of the parties be **DENIED** as to Lee's claim under § 1692e(2)(A).

### 2. Claim Under § 1692e(10)

Lee also maintains that Defendant violated §1692e(10) when it falsely represented the amount of the debt he owed. Section 1692e(10), referred to as a "catch-all" provision, prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. §1692e(10). Defendant moves for summary judgment on this claim because Lee does not allege any new or different conduct than previously alleged to support this claim. (Dkt. No. 20 at 41, ¶ 88). The Court must agree with Defendant. When a plaintiff merely re-alleges a violation of another section of the FDCPA, as Lee has done here, it is not sufficient to constitute a violation of § 1692e(10) as well. *See Gostony v. Diem Corp.*, 320 F.Supp.2d 932, 942 (D. Ariz. 2003); *Dutton v. Wolhar*, 809 F.Supp. 1130, 1140 (D. Del. 1992); *Beattie v. D.M. Collections, Inc.*, 754 F.Supp. 383, 394 (D.Del.1991); *Wideman v. Monterey Financial Serv. Inc.*, 2009 WL 1292830 at *3 (WD Pa. May 7, 2009).

Accordingly, the Court **RECOMMENDS** that Defendant's Motion be **GRANTED** on Lee's claim under § 1692e(10) and, to the extent urged, Plaintiff's Partial Motion be **DENIED**.

### 3. Claim Under § 1692d

Lee alleges that Defendant violated § 1692d(2) and d(5). Defendant moves for summary judgment on Lee's claims under both d(2) and d(5). (Dkt. No. 20 at 27-35). The Act, 15 U.S.C. § 1692d, provides, in relevant part, the following:

> [a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the

10

collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\*   \*   \*

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader;

\*   \*   \*

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

The record before the Court reveals no evidence that any of Defendant's representatives used any form of obscenity or profanity when talking with Lee. Nor is there any evidence that Defendant's representatives used any offensive language when conversing with Lee.[7] The Court, therefore, finds, as a matter of law, that there was no violation of § 1962d(2) and, thus, Defendant is entitled to summary judgment on this claim.

Turning to Lee's claim under subsection (5), the Court concludes that it fares no better. In order to establish that a debt collector violated subsection (5), a plaintiff must be able to show that the repeated calls were made with the intent to annoy, abuse, or harass. 15 U.S.C. § 1692d(5); *see generally*, *Gorman v. Wolpoff & Abramson, LLP*, 435 F.Supp.2d 1004, 1012 (N.D. Cal. 2006), *rev'd on other grounds*, 584 F.3d 1147 (9th Cir. 2009) (recognizing that "Congress did not intend the FDCPA to completely bar any debt collection calls."). Ordinarily, the

---

[7] While subsection (2) is meant to prevent debt collectors from using either obscenities or profanities, the provision also encompasses other offensive language that might include "name-calling, racial or ethnic slurs, and other derogatory remarks which are similar in their offensiveness to obscene or profane remarks." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1178 (11th Cir. 1985); *see also*, Federal Trade Commission, Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50097, 50105 (1988) ("[a]busive language includes religious slurs, profanity, obscenity, calling the consumer a liar or a deadbeat, and the use of racial epithets.").

11

determination of whether a debt collector's conduct constituted harassment, oppression or abuse in violation of the Act is a question of fact for the jury, however, in appropriate cases, the question can be resolved as a matter of law. *Jeter*, 760 F.2d at 1179-80. The Court is of the opinion that this is one such case. Here, despite Lee's contentions that Defendant caused his phone to ring and engaged him a phone conversation repeatedly, there is no evidence before the Court that Defendant did so with an intent to annoy, abuse or harass him. Instead, at best, the evidence before the Court reflects that Defendant called Lee only a handful of times and when its representatives actually spoke with him, the conversations were fairly brief. The evidence also reflects that Defendant never called Lee more than once a day and, in reviewing the recordings of the calls and Lee's own testimony, there is no evidence that Defendant's representatives were rude to him and no evidence that he was ever threatened in any manner in an attempt to recover the debt he owed Comcast. Thus, even after construing the evidence in a light most favorable to Lee, the Court finds that it is insufficient to permit a finder of fact to conclude that Defendant violated subsection d(5). *Udell v Kan. Counselors, Inc.*, 313 F.Supp.2d 1135 (DC Kan. 2004) (placing four calls to individual over the course of seven days without leaving messages did not constitute harassment under Act); *Clingaman v. Certegy Payment Recovery Serv.*, No. H-10-2483, 2011 WL 2078629 (S.D. Tex. May 26, 2011) (despite fact that debt collector made 55 calls to individual over a three month period, court determined that the volume of calls was insufficient to show an intent to harass).

The Court, therefore, **RECOMMENDS** that Defendant's Motion for Summary Judgment as to Lee's claims under 15 U.S.C. § 1692d be granted.

12

### 4. Claim Under § 1692g(a)

Lee next alleges that Defendant violated the Act by not providing him with the requisite

notice under §1692g.  Both parties have moved for summary judgment on this claim.  (Dkt. No.

20 at 41-43; Dkt. No. 27 at 5-6).

The FDCPA contains a notice provision that details information that debt collector are

required to provide to consumers when attempting to collect debts.  In particular, 15 U.S.C.

§ 1692g(a) provides:

> **(a) Notice of debt; contents.**   Within five days after the initial
> communication with a consumer in connection with the collection of any
> debt, a debt collector shall, unless the following information is contained
> in the initial communication or the consumer has paid the debt, send the
> consumer a written notice containing–
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of
> the notice, disputes the validity of the debt, or any portion thereof, the debt
> will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing
> within the thirty-day period that the debt, or any portion thereof, is
> disputed, the debt collector will obtain verification of the debt or a copy of
> a judgment against the consumer and a copy of such verification or
> judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-
> day period, the debt collector will provide the consumer with the name and
> address of the original creditor, if different from the current creditor.

Lee contends that Defendant failed to send him the written notices prescribed by §1692g.

Defendant counters that it was only required to send written notice to Lee if the information was

not conveyed in the initial communication.  Defendant posits that since Lee never alleged that the

representative failed to communicate all this information to him when they first spoke, that it must have occurred, hence, the statute did not require it to provide him with written notice. (Dkt. No. 20 at 41-42). Despite the fact that the Court agrees with Defendant's interpretation of the statute,[8] it is not persuaded by its leap in logic (*i.e.*, taking Lee's failure to complain as proof that the information was provided during the call). Here, the evidence before the Court does not establish whether or not all the information was provided to Lee during the initial communication.

Nevertheless, Defendant argues that, even assuming that all the information was not conveyed during the initial communication, it complied with the written notice requirements. Defendant does not, however, submit the actual letters that it sent to Lee. Rather, Defendant attempts to rely on notations of codes contained in its documentation log, which indicate that the letter should have been sent, along with a "form" letter showing what the letters would have stated. (Dkt. No. 20, Def.App. at 76-77). Unfortunately, for Defendant, this evidence falls short of establishing that the letter was, in fact, sent to Lee and, if so, that it was sent within the prescribed time. Insofar as material issues exist as to whether or not the statutory notice requisites were met, the Court **RECOMMENDS** that the cross-motions be **DENIED**.

In summary, with regard to Lee's claims under the FDCPA, the Court finds that triable issues of fact exists as to Lee's claims under § 1692e(2)(A) and § 1692g(a) which preclude summary judgment.[9]

---

[8] The statute clearly provides that where all the information is provided to the consumer during the initial communication then no written notice is required. 15 U.S.C. § 1692g(a).

[9] Lee seeks actual damages as well as statutory damages for Defendant's violation of the FDCPA. (Dkt. No. 1 at ¶¶ 21-23). Although Defendant maintains that Lee has failed to prove actual damages under the Act (Dkt. No. 20 at 47-52), the FDCPA does not require proof of actual damages as a condition to the recovery of statutory damages. *Keele v. Wexler*, 149 F.3d 589, 593-94 (7th Cir. 1998); *In re*

14

### B. Texas Debt Collection Practices Act

Lee alleges that CMI's actions also violated § 392.304(a)(19) of the Texas Debt Collection

Practices Act ("TDCPA"), which is found in the Texas Finance Code, by falsely representing the

amount owed.  Defendant CMI  moves for dismissal of Lee's TDCA claim on the same grounds

that it moved for dismissal of his § 1692e(2)(A) claim.  (Dkt. No. 20 at 40-41).

The TDCPA gives a consumer the right to sue for "threats, coercion, harassment, abuse,

unconscionable collection methods, or misrepresentations made in connection with the collection

of a debt."  *T & S Auto Sales, Inc. v. Anderson*, No. 03-99-00354, 2000 WL 140935, *1 n. 2

(Tex.App.-Austin Feb.3, 2000) (citing Tex. Fin.Code Ann. §§ 392.301-392.404).  In particular,

the relevant portions of the Act provide:

> (a) Except as otherwise provided by this section, in debt collection or
> obtaining information concerning a consumer, a debt collector may not use
> a fraudulent, deceptive, or misleading representation that employs the
> following practices:
>
> *    *    *
>
> (19) using any other false representation or deceptive means to collect a
> debt or obtain information concerning a consumer.

Tex. Fin.Code Ann. §§ 392.304(a)(19).

Under Texas law, a collection notice or statement misstating the amount owed on a debt

can constitute a misleading assertion regarding that debt under the TDCPA.  *Baker v. Countrywide*

*Home Loans, Inc.*, No. 3:08-CV-0916, 2009 WL 1810336, at *7 (N.D. Tex. June 24, 2009);

*Steele v. Green Tree Servicing, LLC*, No. 3:09-CV-0603, 2010 WL 3565415, at *5 (N.D. Tex.

---

*Rogers*, 391 B.R. 317, 321-22 (BC MD La. 2008).  Further, because triable issues of fact exist, the Court
believes it is unnecessary to rule on issues concerning damages.

Sept. 7, 2010). In the present case, although disputed by Defendant, there is evidence before the Court that Defendant repeatedly misstated the amount of debt Lee owed and was persistent in its attempt to collect more than ten times the amount of debt Lee believed he owed Comcast.

Insofar as the evidence is sufficient to give rise to triable issue of material fact, the Court **RECOMMENDS** that Defendant's Motion be **DENIED** as to Lee's TDCPA claim.

### C. Texas Deceptive Trade Practices Act

#### 1. Lee's Partial Motion for Summary Judgment

Lee moves for summary judgment on his DTPA claim. (Dkt. No. 27 at cover). Lee appears to argue that, insofar as Defendant violated the TDCA, this is an automatic violation of the DTPA. (Dkt. No. 27 at 5). Defendant responds by arguing that since Lee never alleged a violation of the DTPA's tie-in-provision he cannot now seek summary judgment on this claim. (Dkt. No. 35 at 25). On this point, the Court must agree with Defendant. After reviewing his Complaint, the Court finds that while Lee does make a claim under the DTPA,[10] he has not alleged a violation of the DTPA's tie-in-provision, which is set forth in §392.404(a) of the Tex. Fin.Code Ann. The Court, therefore, **RECOMMENDS** that Lee's Motion for Partial Summary Judgment on this claim be **DENIED**.

---

[10] In his Complaint Lee alleges that Defendant violated the Texas Deceptive Trade Practices Act. ("DTPA") when it "made numerous material misrepresentations in an attempt to collect the purported consumer debt" and "knew or should have known that its representations were false and/or acted in reckless disregard for the truth or falsity of its representations." (Dkt. No. 1 at 8, ¶¶ 31,32). Lee further alleges that Defendant's acted "maliciously and in willful, wanton and reckless disregard for the rights of [Lee]." (*Id*. at ¶ 33).

## 2.  **Defendant's Motion for Summary Judgment**

Defendant moves for summary judgment on Lee's DTPA claims.  (Dkt. No. 20 at 43-45). To prevail on a claim under the DTPA, a plaintiff must establish that (1) he is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages.  *Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex.1995) (citing TEX. BUS. & COMMERCE CODE § 17.50(a) (1)).   A "consumer" is defined as "an individual ... who seeks or acquires by purchase or lease, any goods or services ...."  *Id*. § 17.45(4).

The undisputed evidence before the Court reflects that Lee is a consumer under the Act. Notwithstanding, in light of his allegations,[11] he fails to establish the other requisites of this claim. *See Mace v. City of Palestine*, 333 F.3d 621, 624 n. 7 (5th Cir. 2003) ("a nonmovant cannot overcome summary judgment with conclusory allegations and unsubstantiated assertions."); *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000) ("[T]he nonmoving party may not rest on the mere allegations or denial of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial."); *Johnston v. City of Houston, Tex.*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("only evidence–not argument, not facts in the complaint–will satisfy the burden.").   Because the evidence before the Court is insufficient to raise a triable issue of fact regarding the other elements required to establish a DTPA claim, this Court must, therefore, **RECOMMEND** that Defendant's Motion for Summary Judgment be **GRANTED** as to this claim.

---

[11] *Supra* note 10.

## E. Telephone Consumer Protection Act

Lee alleges that Defendant violated the Telephone Consumer Protection Act. Both parties have moved for summary judgment on this claim. (Dkt. Nos. 20, 27).

The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq., provides, in relevant part, that it shall be unlawful for any person within the United States "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call." 47 U.S.C.A. § 227(b)(1)(A)(iii).

Defendant raises a number of preliminary concerns about the application of the TCPA. Defendant leads with the argument that the TCPA does not apply to its debt collection activities. (Dkt. No. 20 at 5). This argument is not well-taken. In a declaratory ruling, one to which the Court will defer,[12] the FCC determined that debt collectors, such as Defendant, can be responsible for any violation of the TCPA. *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 562 (F.C.C.2007) (recognizing that in 1992 the exemption to the Act for debt collectors was removed).

Defendant next argues that the Court does not have federal-question jurisdiction over Lee's TCPA claim. (Dkt. No. 20 at 7-8). Defendant is correct that in *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 512 (5th Cir. 1997), the Fifth Circuit determined that a federal court

---

[12] In enacting the TCPA, Congress explicitly granted the Federal Communications Commission ("FCC") authority to determine "by rule or order" the bounds of the Act. Moreover, the Supreme Court has explained that these delegations represent a "very good indicator" of situations which warrant judicial deference. *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001).

lacked federal-question jurisdiction over TCPA claims;[13] however, as Defendant itself concedes (Dkt. No. 20 at 7, ¶ 16; Dkt. No. 31 at 4, ¶ 8), nothing in the TCPA divests federal courts of either diversity jurisdiction or supplemental jurisdiction over this claim.  Here, insofar as the Court has federal question jurisdiction over Lee's FDCPA claims, it concludes that it may exercise supplemental jurisdiction over Lee's TCPA claims.[14]  *See Gottlieb v. Carnival Corp.*, 436 F.3d 335, 342-43 (2d Cir. 2006) (J. Sotomayor) (determining that Congress did not divest district courts of the authority to exercise supplemental jurisdiction over private TCPA claims); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 451 (7th Cir. 2005) (implying that nothing bars district courts from exercising supplemental jurisdiction over TCPA claims); *Brown v. Hosto & Buchan PLLC*, 748 F.Supp.2d 847, 854-59 (W.D. Tenn. 2010).

Third, Defendant argues that, looking through the lens from which violations of the TCPA are enforced, Texas limits any damages to situations where calls are "received.[15]  (Dkt. No. 20 at 11-17).  Regardless of this apparent state limitation, it is undisputed (and further evidenced by the telephone recordings) that Lee actually "received" calls that Defendant's agents placed to him on his cellular phone in an attempt to collect the alleged debt.  The issue that remains, and upon which much dispute exists, is how many calls Lee received.

---

[13] The Fifth Circuit's 1997 holding in *Chair King* has been called into question because it cannot be reconciled with the later issued Supreme Court decisions in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manuf*, 545 U.S. 308 (2005) (holding federal jurisdiction does not depend on the existence of a private right of action under federal law) and *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003) (holding that statutory permission to litigate a federal claim in state court does not foreclose removal under the federal-question jurisdiction).

[14] Lee's Complaint contains a clear typographical error.  As a basis for jurisdiction he referred 28 U.S.C. § 1337, which deals with commerce and antitrust regulations – something clearly not relevant here – as opposed to § 1367, which addresses supplemental jurisdiction.

[15] Texas permits plaintiffs to assert claims for violations of the TCPA.  *See* TEX. BUS. & COM. CODE § 305.053.

Having addressed these preliminary issues, the Court now turns to the specific requisites of the statute. While there appears to be no dispute that calls were made to Lee's cellular phone and "received" by him, Defendant has raised numerous arguments why no violations can be established under the TCPA. First, Defendant argues that the Act does not apply because Lee has produced no evidence that he was charged for the calls it made to his cellular phone. The Court disagrees. Lee has stated that he pays a third-party provider for cellular phone services. Normally, this is sufficient to show that an individual was charged for the calls. *See In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 562 (F.C.C.2007) (noting that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used").

Second, Defendant argues that Lee has not established that the calls were made by an automatic telephone dialing system. (Dkt. No. 20 at 19-23). The Court cannot agree. In 2003, the Federal Communications Commission ("FCC") determined that, for purposes of the TCPA, an "automatic telephone dialing systems" included predictive dialers.[16] *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14091-92 (footnotes omitted) (2003) (2003 FCC Report). Lee contends that Defendant used a predictive dialer to contact him. In support of his contentions, Lee has submitted the "Collection Services Agreement" between Comcast and CMI. As reflected in this Agreement, CMI agreed that when it received work from Comcast, as was the case here, it would contact the customers

---

[16] A predictive dialer is dialing equipment that, through the use of complex formulae, attempts to predict when a person will answer the telephone; a telemarketing call is then not transferred to a live operator until the equipment predicts a person will have answered.

20

by mail and predictive dialer.[17]   While it may be true that this evidence does not prove that was how Lee was contacted, the Court believes that this evidence is sufficient to raise an issue of material fact for trial regarding whether Defendant used a predictive dialer, which the FCC has interpreted to constitute an "automatic telephone dialing system," when contacting Lee about his debt.

Finally, Defendant argues that there was no violation of the Act because Lee consented to the calls to his cellular phone.   The TCPA prohibits only those calls made without the "prior express consent of the called party."  47 U.S.C. § 227(b)(1)(A).   Although Defendant correctly points out that the Fifth Circuit has not addressed whether "consent" under the TCPA is an element of the claim or an affirmative defense, *Gene & Gene, LLC v. Biopay, LLC*, 541 F.3d 318,237 (5th Cir.2008),[18] it appears to ignore the longstanding administrative guidance that has been provided on this issue.[19]   In particular, in the view of the FCC, consent under the TCPA is an affirmative defense upon which the creditor, in this case Defendant, bears the burden.[20]

---

[17] The Collection Services Agreement expressly provides: "2.  Upon receipt of work CMI will contact customers via mail and predictive dialer in an effort to collect on past due balances."  (Dkt. No. 36, Ex. C, CMI 0295).

[18] The Fifth Circuit in *Gene* involved the issue of a certification of a class action.  The Fifth Circuit has stated that "[a]n affirmative defense is not per se irrelevant to the predominance inquiry," *Gene & Gene*, 541 F.3d at 327, and the "predominance of individual issues necessary to decide an affirmative defense may preclude class certification."  *In re Monumental Life Ins. Co.*, 365 F.3d 408, 420 (5th Cir. 2004).  The Court determined that the predominance requirement unfulfilled because the court would be required to determine whether the advertisements "were transmitted without the prior express invitation or permission of each recipient," and issue of " individual consent."  *Id*. at 327.

[19] *Supra* note 12.

[20] The Court observes that Defendant did not assert consent as an affirmative defense in his Answer (Dkt. No. 6) (*See e.g.*, The Late Charles Wright and Arthur Miller, et al., Federal Practice & Procedure, § 2734 (3d ed. 2011), however, Lee has never objected to this failure, and even responded to Defendant's Motion for Summary Judgment in which it raised this issue.

Specifically, in *In re Rules Implementing the Telephone Consumer Protection Act of 1991*, 23

F.C.C.R. 559, 564 (2008), the FCC explained:

> Although the TCPA generally prohibits autodialed calls to wireless phones, it also provides an exception for autodialed and prerecorded message calls for emergency purposes or made with the prior express consent of the called party. Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party, we clarify that such calls are permissible. We conclude that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt. In the 1992 TCPA Order, the Commission determined that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." The legislative history in the TCPA provides support for this interpretation. Specifically, the House report on what ultimately became section 227 states that:
>
>> [t]he restriction on calls to emergency lines, pagers, and the like does not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications.
>
> We emphasize that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed. <u>To ensure that creditors and debt collectors call only those consumers who have consented to receive autodialed and prerecorded message calls, we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent. The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications. Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent. Similarly, a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls</u>

---

> placed by a third party collector on behalf of that creditor are treated as if
> the creditor itself placed the call.

[Emphasis added]. 1992 TCPA Order, 7 FCC Rcd at 8769, para. 31 (citing House Report, 102-317, 1st Sess., 102nd Cong. (1991) at 13, "noting that in such instances the called party has in essence requested the contact by providing the caller with their telephone number for use in normal business communications"). However, the Commission also cautioned that if a caller's number is "captured" by a Caller ID or an ANI device without notice to the residential telephone subscriber, then the caller cannot be considered to have given an invitation or permission to receive autodialer or prerecorded voice message calls. *Id.*

While Lee testified that he does not recall giving Comcast the number for his cellular phone (*see* Dkt. No. 52, "Def.App. at 00064-66"), Defendant argues that Lee consented to the call because it obtained the number from Comcast. Notably, however, Defendant offers no explanation for how Comcast obtained the number, nor does it offer any "purchase agreements, sales slips, and credit applications" that reflect that Lee provided them with the number. (*See* Dkt. No. 52 at 9, ¶ 18 (defense counsel represents that in response to Defendant's request for any applications Comcast responded that it had no such documents). Nevertheless, in a further attempt to support its contentions and shoulder its burden of proof, Defendant then submitted a "work order", dated October 10, 2009, which it claims it only realized that it had received from Comcast on October 21, 2011, after a "last minute" request. (Dkt. No. 42 at Def.App. 0004-5; Dkt. No. 52 at 9, ¶ 18).[21] The work order reflects that a technician was at Lee's house to "rewire" and

---

[21] The Court pauses to note that, in submitting this evidence, Defendant explained that it previously requested any applications that Lee either submitted or that were prepared in regard to his account with Comcast and was apparently told by Comcast that no such documents existed. (Dkt. No. 52 at 9, ¶ 18). Thereafter, it appears that Defendant again asked Comcast to find and provide any document they had with Lee's telephone number on it. (*Id.*). In response to this request, and apparently after the September 2,

"bury drop." (*Id.*). The pre-filled top portion of the work orders includes Lee's phone number. (*Id.*). The first page of the work order also appears to contain Lee's signature which follows a small block of text entitled "IMPORTANT SUBSCRIBER INFORMATION." (*Id.*). This block of information included the following: "I agree to be bound by Comcast Subscriber Agreement(s) which constitute the agreement(s) between Comcast and me for the service(s). If other non-installation work was provided, I agree to be bound by the current Comcast Subscriber Ageement(s)." (*Id*). The technician's notes on the work order reflect that he gave Lee a "customer survey," but there is no indication that the Comcast Subscriber Agreement(s), contained in a different document, and approximately 20 pages in length (*see* Dkt. No. 42, "Def.App. 0008-0037), was ever provided to Lee. Although the work order produced by Defendant may ultimately assist it in proving consent, the Court believes that this document, standing alone, falls short of actually establishing Lee's consent under the Act. Insofar as the evidence is sufficient to give rise to a triable issue of material fact, this Court is of the opinion that summary judgment is not appropriate.

For all the reasons discussed, the Court **RECOMMENDS** that the cross motions of the parties be **DENIED** as to Lee's TCPA claim.

---

2011, discovery cut-off, Comcast provided Defendant with a work order on which Lee's number appeared. (*Id.*). After all the briefing on Defendant's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment were completed, Defendant sought leave to file a supplement to its Motion and its response to Plaintiff's Motion. The late production of this document ignited a flurry of accusatory activity which delayed the Court's ability to issue this Report and Recommendation.

## CONCLUSION

For the foregoing reasons, this Court **RECOMMENDS** that Plaintiff Derek Lee's Motion for Partial Summary Judgment (Dkt. No. 27) be **DENIED**; and that Defendant Credit Management's Motion for Summary Judgment (Dkt. No. 20) be **GRANTED** as to the following claims Lee's FDCPA claims under § 1692e(10) and § 1692d and his DTPA claims; but **DENIED** as to Lee's claims FDCPA under §1692a(2)(A) and § 1692(g)(a), the TDCPA and the TCPA.

The Clerk **SHALL** send a copy of this Report and Recommendation to the Parties who **SHALL** have until **January 11, 2012**, in which to have written objections filed pursuant to 28 U.S.C. §636(b)(1)(C). Failure to file written objections within the prescribed time **SHALL** bar the Parties from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this ___ _27th_ ___ day of December, 2011.

JOHN R. FROESCHNER
UNITED STATES MAGISTRATE JUDGE